No. 15-16440, 15-16626

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

MANUEL DE JESUS ORTEGA MELENDRES, ET AL.,

*Plaintiffs-Appellees,*

v.

MARICOPA COUNTY; JOSEPH M. ARPAIO,
*Defendants-Appellees,*

and

DENNIS L. MONTGOMERY,
*Proposed Intervenor-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
2:07-cv-02513-GMS
The Honorable G. Murray Snow
United States District Judge

ANSWERING BRIEF OF PLAINTIFFS-APPELLEES

**Stanley Young**
**Michelle L. Morin**
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood shores, CA 94065-1418
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
syoung@cov.com
mmorin@cov.com

**Cecillia D. Wang**
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0775
Facsimile: (415) 395-0950
cwang@aclu.org

*Attorneys for Plaintiffs-Appellees*
*MANUEL DE JESUS ORTEGA MELENDRES, ET AL.*

**Dan Pochoda**
ACLU FOUNDATION OF ARIZONA
3707 N. 7th St., Ste. 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
Facsimile: (602) 650-1376
dpochoda@acluaz.org
jlyall@acluaz.org

**Anne Lai**
401 E. Peltason Dr.
Law 4800-P
Irvine, CA 92697-8000
Telephone: (949) 824-9894
Facsimile: (949) 824-0066
alai@law.uci.edu

**Andre Segura**
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 17th Floor
New York, NY 10004
Telephone: (212) 549-2676
Facsimile: (212) 549-2654
asegura@aclu.org

**Jorge Martin Castillo**
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL
FUND
634 South Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
jcastillo@maldef.org

*Attorneys for Plaintiffs-Appellees*

***MANUEL DE JESUS ORTEGA MELENDRES, ET AL.***

# TABLE OF CONTENTS

STATEMENT REGARDING INTERESTED PARTIES ....................................... 1

STATEMENT REGARDING JURISDICTION ...................................................... 2

STATEMENT OF THE ISSUES ........................................................................... 7

STATEMENT OF THE CASE ............................................................................... 8

    1.    Procedural History ............................................................... 8

    2.    Testimony and Documents Regarding MCSO's Investigation ............ 9

    3.    Montgomery's Motions to Intervene and to Disqualify the District Court .................................................................... 10

    4.    Montgomery's Motion to Intervene in Defendants' Appeal Relating to Motions Seeking Recusal ................................................ 15

STANDARDS OF REVIEW ................................................................................ 16

    1.    Denial of Motions for Pro Hac Vice Admission to Practice ............. 16

    2.    Nonparty Standing to Appeal ........................................................... 16

    3.    Denial of Motions for Intervention ................................................... 17

    4.    Denial of Motions to Recuse or Disqualify a Trial Judge ................. 17

SUMMARY OF ARGUMENT ............................................................................ 18

ARGUMENT ....................................................................................................... 21

I.    The Court Lacks Jurisdiction To Immediately Review These Denials of *Pro Hac Vice* Applications, Which Were, In Any Event, Properly Decided. ......................................................................................... 21

    A.    This Court Does Not Have Jurisdiction to Review the Denial of Klayman's and Moseley's Pro Hac Vice Applications ...................... 21

    B.    If Appealable, the Denials of Klayman and Moseley's Pro Hac Vice Motions Were Properly Decided and Should Be Affirmed. ..... 24

II.  Montgomery's Motion To Intervene Is Not Properly Before This Court, and If It Were, He Would Fail on the Merits. ................................... 31

    A.  The Merits, If Any, of Montgomery's Request to Intervene Are Not Appealable Because The District Court Has Not Decided It. ........................................................................................ 31

    B.  Montgomery Did Not Meet the Requirements for Intervention. ....... 31

        1.  Intervention as of Right .......................................................... 32

        2.  Permissive Intervention .......................................................... 35

III.  Montgomery Does Not Have Standing to Obtain Appellate Review of Any Orders of the District Court. ................................................................. 37

IV.  Even if Montgomery Had Standing to Appeal, The Remaining Issues He Raises Are Not Justiciable, and Would Fail on the Merits. .................... 38

    A.  Denial of the Motion to Recuse Is Not Immediately Appealable, and Recusal Would Be Unwarranted Here. ....................................... 38

    B.  Montgomery's Claims Regarding "Property Rights" Are Not Reviewable, And Would Fail If Considered on the Merits. .............. 40

    C.  Montgomery's Unsupported Factual Allegations Should be Disregarded, as Should His Allegations Regarding Facts that Postdate the Orders Denying Pro Hac Vice Admission. .................... 41

CONCLUSION .............................................................................................. 43

CERTIFICATE OF COMPLIANCE ............................................................. 45

CERTIFICATE OF SERVICE ....................................................................... 45

STATEMENT OF RELATED CASES .......................................................... 46

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Lung Ass'n of N.J. v. Kean*,
  871 F.2d 319 (3d Cir. 1989) ............................................................17

*Arakaki v. Cayetano*,
  324 F.3d 1078 (9th Cir. 2003) .........................................................34

*Baldwin Hardware Corp. v. FrankSu Enter. Corp.*,
  78 F.3d 550 (Fed. Cir. 1996) ....................................................13, 14

*Bank of Am. v. M/V Exec.*,
  797 F.2d 772 (9th Cir. 1986) ...........................................................17

*Bense v. Starling*,
  719 F.2d 241 (7th Cir. 1983) ...........................................................22

*Bryant v. Tech. Research Co.*,
  654 F.2d 1337 (9th Cir. 1981) .........................................................16

*Citibank Int'l v. Collier-Traino, Inc.*,
  809 F.2d 1438 (9th Cir. 1987) .....................................................5, 16

*Cohen v. Beneficial Indus. Loan Corp.*,
  337 U.S. 541 (1949)........................................................................18

*Cole v. U.S. Dist. Ct. for the Dist. of Idaho*,
  366 F.3d 813 (9th Cir. 2004) ...........................................................27

*Defenders of Wildlife v. Perciasepe*,
  714 F.3d 1317 (D.C. Cir. 2013)..............................................5, 24, 37

*Donnelly v. Glickman*,
  159 F.3d 405 (9th Cir. 1998) .......................................32, 34, 35, 36

*Firestone Tire & Rubber Co. v. Risjord*,
  449 U.S. 368 (1981)....................................................................4, 23

*Flanagan v. United States*,
  465 U.S. 259 (1984)...............................................................4, 21, 23

iii

*Gallo v. U.S. Dist. Ct. for the Dist. of Ariz.*,
   349 F.3d 1169 (9th Cir. 2003) ..........................................................3, 16, 21, 23

*Gas-A-Tron of Ariz. v. Union Oil Co. of Cal.*,
   534 F.2d 1322 (9th Cir.), *cert. denied*, 429 U.S. 861 (1976) .................16, 27, 28

*Hamid v. Price Waterhouse*,
   51 F.3d 1411 (9th Cir. 1995) ..............................................................................18

*Hedges v. Resolution Trust Corp.*,
   32 F.3d 1360 (9th Cir. 1994) ..............................................................................24

*Hilao v. Estate of Marcos*,
   393 F.3d 987 (9th Cir. 2004) .........................................................................5, 38

*Hollingsworth v. Perry*,
   558 U.S. 183 (2010)............................................................................................27

*Hollingsworth v. Perry*,
   133 S.Ct. 2652 (2013)..........................................................................................5

*In re Application for Exemption from Elect. Pub. Access Fees by
   Jennifer Gollan and Shane Shifflett*,
   728 F.3d 1033 (9th Cir. 2013) ..................................................................3, 21, 22

*In re Carlyle*,
   644 F.3d 694 (8th Cir. 2011) ..............................................................................22

*In re Cnty. of L.A.*,
   223 F.3d 990 (9th Cir. 2000) ..............................................................................26

*In re Coordinated Pretrial Proceedings, etc.*,
   658 F.2d 1355 (9th Cir. 1981), *cert. denied*, 455 U.S. 990 (1982) ....................30

*In re Landmark Fence Co.*,
   801 F.3d 1099 (9th Cir. 2015) .........................................................................3, 31

*In re Long*,
   475 F.3d 880 (7th Cir. 2007) ..............................................................................22

*In re United States*,
   791 F.3d 945 (9th Cir. 2015) .........................................................................24, 30

iv

*Ivey v. Board of Regents*,
673 F.2d 266 (9th Cir. 1982) .............................................................24

*Jorgensen v. Cassiday*,
320 F.3d 906 (9th Cir. 2003) .............................................................18

*League of United Latin Am. Citizens v. Wilson*,
131 F.3d 1297 (9th Cir. 1997) ...........................................................42

*MacDraw, Inc. v. CIT Group Equip. Financing, Inc.*,
138 F.3d 33 (2d Cir. 1998) ...........................................................13, 14

*Melendres v. Arpaio*,
784 F.3d 1254 (9th Cir. 2015) .......................................................8, 36

*Mishewal Wappo Tribe of Alexander Valley v. Salazar*,
534 Fed. Appx. 665 (9th Cir. 2013).....................................................36

*Moseley v. Va. State Bar, ex rel. Seventh Dist. Comm.*,
694 S.E.2d 586 (Va. 2010) ................................................................14

*Northwest Forest Res. Council v. Glickman*,
82 F.3d 825 (9th Cir. 1996) ...............................................................36

*Perry v. Proposition 8 Official Proponents*,
587 F.3d 947 (9th Cir. 2009) .......................................................32, 36

*Pesnell v. Arsenault*,
543 F.3d 1038 (9th Cir. 2008) ...........................................................18

*Prete v. Bradbury*,
438 F.3d 949 (9th Cir. 2006) .............................................................32

*Price v. Kramer*,
200 F.3d 1237 (9th Cir. 2000) .................................................17, 18, 39

*Prof'l Programs Grp. v. Dept. of Commerce*,
29 F.3d 1349 (9th Cir. 1994) .............................................................27

*S. Cal. Edison Co. v. Lynch*,
307 F.3d 794 (9th Cir.) *modified*, 307 F.3d 943 (9th Cir. 2002) *and
certified question answered sub nom. S. Cal. Edison Co. v. Peevey*,
74 P.3d 795 (2003).......................................................................*passim*

*Simmons v. Navajo Cnty.*,
   609 F.3d 1011 (9th Cir. 2010) ............................................................................25

*State of Cal. Dep't of Soc. Servs. v. Thompson*,
   321 F.3d 835 (9th Cir. 2003) ............................................................................16

*Trone v. Smith*,
   621 F.2d 994 (9th Cir. 1980) ..............................................................16, 27, 30

*Trust Corp. of Mont. v. Piper Aircraft Corp.*,
   701 F.2d 85 (9th Cir. 1983) ......................................................................16, 30

*United States v. City of Chicago*,
   870 F.2d 1256 (7th Cir. 1989) ..........................................................................18

*United States v. City of Los Angeles*,
   288 F.3d 391 (9th Cir. 2002) ......................................................................32, 35

*United States v. City of Milwaukee*,
   144 F.3d 524 (7th Cir. 1998) .................................................3, 17, 24, 31, 37

*United States v. City of Oakland, Cal.*,
   958 F.2d 300 (9th Cir. 1992) ..............................................................17, 24, 37

*United States v. Ensign*,
   491 F.3d 1109 (9th Cir. 2007) ..........................................................16, 25, 30

*United States v. Greger*,
   657 F.2d 1109 (9th Cir. 1981) ..............................................................4, 21, 23

*United States v. Ries*,
   100 F.3d 1469 (9th Cir. 1996) ..........................................................................29

*United States v. Sardone*,
   94 F.3d 1233 (9th Cir. 1996) ............................................................................24

*United States v. State of Wash.*,
   573 F.2d at 1122 ..........................................................................6, 18, 38, 39

*Venegas v. Skaggs*,
   867 F.2d 527 (9th Cir. 1989) ............................................................................17

*Waller v. Fin. Corp. of Am.*,
   828 F.2d 579 (9th Cir. 1987) ...............................................................................17

**Statutes**

28 U.S.C. § 144 ......................................................................................................18

28 U.S.C. § 1291 ...........................................................................................*passim*

28 U.S.C. § 1292 ....................................................................................................23

**Other Authorities**

Fed. R. App. P. 10(b)(2).........................................................................................42

Fed. R. App. P. 32(a)(7), I .....................................................................................46

Fed. R. Civ. P. 24(a)(2)..........................................................................................32

Fed. R. Civ. P. 24(b)(3)..........................................................................................36

## STATEMENT REGARDING INTERESTED PARTIES[1]

Appellant/Putative Intervenor Dennis Montgomery ("Montgomery") is a nonparty who seeks to intervene in the case below, which is a civil contempt proceeding against Maricopa County[2] and the following alleged contemnors, all employees or former employees of the Maricopa County Sheriff's Office ("MCSO"): Sheriff Joseph M. Arpaio ("Sheriff Arpaio"), Chief Deputy Gerard Sheridan, Deputy Chief John MacIntyre, Retired Executive Chief Brian Sands, and Lt. Joseph Sousa. Montgomery has not been charged with contempt (or ordered to do anything) in relation to this case. He seeks to intervene to assert alleged property rights in certain documents and things MCSO obtained from Montgomery and produced during the proceedings, and also seeks recusal of the District Court judge. The contempt proceedings were initiated in a civil rights case against Sheriff Arpaio and MCSO, in which Sheriff Arpaio and MCSO were found to have committed constitutional violations relating to stopping and detaining individuals based on suspicion of illegal presence in the United States.

---

[1] Montgomery includes in his Opening Brief on Appeal ("Br."), No. 15-16440, Dkt. 13-1, a "Certificate as to Named Parties and Interested Parties" pursuant to abrogated Circuit Rule 28-2.1. Plaintiffs respond to correct inaccuracies in that Certificate.

[2] On appeal, this Court determined that MCSO was not the proper jural entity to be sued, and ordered that Maricopa County be substituted as a party in lieu of MCSO. *Melendres v. Arpaio*, 784 F.3d 1254, 1260 (9th Cir. 2015) (citing *Braillard v. Maricopa Cnty.*, 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010).

The ongoing contempt proceeding in the District Court below comes after Plaintiffs prevailed at trial, obtained detailed injunctive relief, and largely prevailed on appeal of the trial ruling and injunction order before this Court.

## STATEMENT REGARDING JURISDICTION

Montgomery sought to intervene in the District Court's civil contempt proceedings in order to demand that "personal property" be returned to him, to move to strike statements about him from the record, and to seek a stay of the litigation and disqualification of the District Court. ER 540. He now seeks the same relief in his consolidated appeals. *See* No. 15-16440, Dkt. 13-1 at 6-8. But Montgomery's motions in the District Court were terminated when the District Court denied Montgomery's out-of-state attorneys (Mr. Klayman and Mr. Moseley's) motions for *pro hac vice* admission to practice in the District of Arizona, struck those attorneys' prior, unauthorized filings, and denied Moseley's Motion for Reconsideration. ER 51-56; ER 60; ER 795-796; ER 1046-1050 (orders). No decision on the merits of intervention by Montgomery was ever made, and neither his entitlement, if any, to seek recusal, nor the merits of his recusal motion, were considered by the District Court. *See, e.g.*, ER 193, ER 797 (declining to rule on the motion to intervene, because Montgomery could "hire any other attorney that doesn't present the conflict" presented by Klayman and Moseley). Nothing prevented Montgomery from refiling his substantive motions,

either *pro se* or through alternative counsel, to receive consideration of their merits. He elected not to do so. Accordingly, there has been no final ruling by the District Court on the request to intervene. The merits of whether Mr. Montgomery may intervene in the District Court therefore are not properly before this Court, and this Court does not have jurisdiction to consider the question. *See, e.g.*, *In re Landmark Fence Co., Inc.*, 801 F.3d 1099, 1104 (9th Cir. 2015) (declining to address argument that should be raised in trial court where appellate jurisdiction was lacking due to non-final nature of district court's decision); *United States v. City of Milwaukee*, 144 F.3d 524, 528-29 (7th Cir. 1998) (holding that district court's denial of motion to intervene on procedural grounds did not definitively resolve issue of whether putative intervenor should be allowed to intervene, and was therefore not a final decision within the meaning of 28 U.S.C. § 1291).

A separate jurisdictional problem precludes review of the District Court's orders denying the motions for *pro hac vice* admission: such orders are not appealable orders under 28 U.S.C. § 1291. *See In re Application for Exemption from Elect. Pub. Access Fees by Jennifer Gollan and Shane Shifflett*, 728 F.3d 1033, 1039-40 (9th Cir. 2013) ("*In re Appl.*") (no jurisdiction over appeal from orders that are administrative, rather than judicial, in nature); *Gallo v. U.S. Dist. Ct. for the Dist. of Ariz.*, 349 F.3d 1169, 1176 (9th Cir. 2003) (no appellate jurisdiction to review an order by the District Court denying admission to

3

practice); *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 375 (1981) (orders denying motions to disqualify opposing party's counsel in a civil case are not appealable prior to final judgment); *Flanagan v. United States*, 465 U.S. 259, 266-67 (1984) ("order disqualifying counsel lacks the critical characteristics that make orders . . . immediately appealable"); *United States v. Greger*, 657 F.2d 1109, 1113 (9th Cir. 1981) (pretrial order disqualifying counsel in a criminal case was not a "final decision" within collateral order doctrine and was therefore not appealable). Had Montgomery successfully intervened in the case below (or if he does in future), the denial of his previous attorneys' *pro hac vice* motions would be appealable upon final judgment. Here, in contrast, Montgomery never attempted to file a motion to intervene through counsel admitted to practice before the District Court (or *pro se*). Thus, this Court does not presently have jurisdiction to consider the denials of his attorneys' *pro hac vice* motions or any other issues Montgomery raises, and the appeal should be dismissed in its entirety.

Even assuming this Court could properly interpret the District Court's orders denying *pro hac vice* admission as a final and definitive denial of Montgomery's motion to intervene (which would be contrary to the plain words of the orders, *see* ER 193, ER 797), this Court would only have jurisdiction to consider the merits of his intervention, and would not have jurisdiction to consider any other rulings of the District Court, including the District Court's refusal to recuse itself.

4

In addition, as a nonparty who has not been ordered to do or refrain from doing anything, Montgomery does not have standing to appeal any of those orders. *See, e.g.*, *Hollingsworth v. Perry*, 133 S.Ct. 2652, 2662-63 (2013) (petitioners who had not been ordered to do or refrain from doing anything by the district court lacked standing to appeal); *Defenders of Wildlife v. Perciasepe*, 714 F.3d 1317, 1328 (D.C. Cir. 2013) (party unsuccessfully appealing a denial of intervention is not a "party" and may not obtain review of any district court holding other than the denial of intervention). Standing is jurisdictional and cannot be waived. *United States v. Hays*, 515 U.S. 737, 742 (1995) (standing, as "perhaps the most important of [the jurisdictional] doctrines," is not subject to waiver) (citation omitted); *Colwell v. Dept. of Health and Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009) (person asserting the claim has the burden of establishing standing). In this Circuit, a nonparty will have standing to appeal only in "exceptional circumstances." *Citibank Int'l v. Collier-Traino, Inc.*, 809 F.2d 1438, 1441 (9th Cir. 1987); *see also S. Cal. Edison Co. v. Lynch*, 307 F.3d 794 (9th Cir.) *modified*, 307 F.3d 943 (9th Cir. 2002) *and certified question answered sub nom. S. Cal. Edison Co. v. Peevey*, 74 P.3d 795 (2003) (affirming denial of intervention and ruling that nonparty lacked standing to appeal); *Hilao v. Estate of Marcos*, 393 F.3d 987 (9th Cir. 2004) (nonparty lacked standing to appeal where district court orders were not directed against the putative intervenor). Those "exceptional circumstances" are not present

here, where Montgomery admits that the District Court's proceedings have nothing to do with him, Br. at 5.

Other problems with justiciability further demonstrate that this Court has no jurisdiction to consider the issues raised in this appeal. First, appellate adjudication of the existence and ownership of any alleged intellectual or personal property belonging to Montgomery, *see* Br. at 6-7, Appellant's Supplemental Consolidated Opening Brief, No. 15-16626, Dkt. 16 ("Supp. Br.") at 11, is improper when these questions have not first been reached by the District Court. Second, the District Court's denial of Montgomery's recusal motion is not reviewable on this appeal, because even if Montgomery were a party entitled to seek review of that question, denial of a recusal motion is not an immediately appealable order. *See, e.g.*, *United States v. State of Wash.*, 573 F.2d 1121, 1122 (9th Cir. 1978). Moreover, this Court has already considered and rejected Montgomery's previous request for mandamus relief on the same grounds. It should not revisit that decision now. *Id.* (declining to treat as mandamus request an attempt to appeal from nonappealable order denying motion to disqualify trial judge, where court had considered and denied previous petition for mandamus, and additional issues could have been raised in that proceeding).

For all these reasons, and the reasons set forth below, this Court lacks jurisdiction and the appeal should be dismissed.

## STATEMENT OF THE ISSUES

Montgomery's consolidated appeals raise only three issues:

1.      Whether the District Court's orders denying *pro hac vice* admission to Montgomery's counsel are appealable under 28 U.S.C. § 1291, even though they were not final orders disposing of either Montgomery's intervention motion or the underlying civil contempt hearing, and were wholly unrelated to the underlying contempt proceeding; and, only if appealable, whether denial of the motions should be affirmed as within the District Court's proper exercise of its discretion (Issues B-D and G-H, *see* Br. at 1, Supp. Br. at 1);

2.      Whether the District Court's orders denying *pro hac vice* admission may be construed as a denial of Montgomery's motion to intervene, even though the merits of intervention were not reached, and even though Montgomery chose not to re-file his motion to intervene *pro se* or through other counsel; and only if an assumed denial of Montgomery's motion to intervene is further deemed appealable, whether the assumed denial of intervention was proper (Issue A, *see* Br. at 1); and

3.      Whether recusal of the District Court judge may be pursued by nonparty Montgomery in this appeal, even though his motion to intervene was stricken by the District Court and never reviewed, his prior petition for mandamus relief from this court was denied, and he lacks standing to appeal. (Issues E and F, *see* Br. at 1-2).

7

## STATEMENT OF THE CASE

### 1. Procedural History

This appeal arises out of a civil contempt proceeding against Sheriff Arpaio and others, originating from their failure to comply with District Court orders in connection with a civil rights case relating to MCSO's unconstitutional racial profiling and detentions of Latino persons based solely on suspicion of their illegal presence in the country.[3] ER 13-14; SER 004-030.

An evidentiary hearing on the contempt charges commenced in April 2015 and ended in November 2015. SER 397-464 (No. CV07-2513, docket sheet). The parties now await the District Court's findings. SER 464-467.[4]

Montgomery was not a party in either the civil rights case or the contempt proceedings. The District Court issued no orders whatsoever to Montgomery, has not ordered anything in Montgomery's possession seized or disclosed, and has not charged him with contempt or entered any judgment against him. Only testimony by other witnesses regarding Montgomery's prior work for MCSO, and the

---

[3] Pursuant to its findings and conclusions after a bench trial, the District Court ordered, and this Court upheld, a number of injunctive remedies for MCSO's constitutional violations. The District Court continues to monitor and enforce those injunctive provisions. *See, e.g.*, ER 12-26 (order setting forth procedural background for denial of recusal motion); *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015).

[4] Montgomery's statement that the case has ended, Br. at 5-6, is incorrect.

8

introduction into evidence of documents and information about or provided to

MCSO by Montgomery connect Montgomery to these proceedings in any way.[5]

## 2. Testimony and Documents Regarding MCSO's Investigation

During the contempt hearing, the District Court received evidence on a

number of topics relevant to whether Sheriff Arpaio's admitted failures to comply

with the District Court's orders reflected a pattern of resistance by the Sheriff and

MCSO, which could affect the District Court's decision on appropriate remedies.

ER 16 (citing SER 053). Among these topics was the work done by Montgomery

as a confidential informant for MCSO. That topic arose when Sheriff Arpaio and

Chief Deputy Sheridan testified about a press article alleging that Montgomery was

helping MCSO investigate the District Court judge. SER 098-106, SER 035-045;

ER 681-692. Sheriff Arpaio and others confirmed that MCSO was conducting an

investigation, through Montgomery, and that Montgomery was paid as MCSO's

confidential informant for his services and information. ER 17-18 (citing SER 035,

SER 043; ER 681-692).

The District Court ordered MCSO to produce to the Court's Monitor and to

Plaintiffs, subject to a protective order, any documents and information in the

---

[5] Among the many unsupported and inaccurate statements in Montgomery's briefs
are allegations that the District Court or Plaintiffs "dragged" Montgomery into the
case, Supp. Br. at 4, 5. Montgomery also inaccurately implies that no party
opposed the *pro hac vice* motions, when Plaintiffs opposed both Moseley's and
Klayman's motions. *See, e.g.*, ER 193-198, ER 1220-1233.

possession of MCSO or its employees relating to the Montgomery investigation, ER 142-146. The MCSO did disclose the materials, which showed that MCSO, through the civilian head of MCSO's "Cold Case Posse," Michael Zullo, had (1) investigated Montgomery's allegations that the District Court judge, the Attorney General of the United States, and others, were conspiring against Sheriff Arpaio and (2) looked into an alleged penetration of the District Court judge's banking information, using what Montgomery said were intercepted telephone and email communications that Montgomery told MCSO he had stolen while he was a contract employee of the Central Intelligence Agency. ER 93-94, 216-219; SER 101, 108, 121-139. MCSO eventually concluded that Montgomery's information, which included 50 hard drives of data that Montgomery alleged the CIA had illegally "harvested," was "junk" and that there was no evidence to support the alleged conspiracy. SER 110-114; ER 689.

### 3. Montgomery's Motions to Intervene and to Disqualify the District Court

On May 8, 2015, Montgomery, through his counsel Mr. Moseley and Mr. Klayman, filed a motion to intervene in the District Court proceedings, as well as a motion to disqualify the District Court from further involvement with the case. ER 539-576. Neither Mr. Moseley nor Mr. Klayman are members of the State Bar of Arizona; accordingly, each attorney (first Mr. Moseley and then Mr. Klayman) sought to be admitted *pro hac vice*. *See*, *e.g.*, ER 60, ER 83-91, ER 466-78.

10

Plaintiffs opposed the motions. ER 193-198; ER 1220-1233. Both applications were denied for reasons including the conflict of interest created by these attorneys' simultaneous representation of Sheriff Arpaio in other proceedings and the Court's interest in ensuring that the proceedings "are conducted within the standards of the profession." *See* ER 54; ER 60; ER 795-798; ER 1046-1050; *see also* ER 1220-1233.

First, the District Court found that allowing Mr. Moseley and Mr. Klayman (and their firm, Freedom Watch) to represent Montgomery would create an impermissible conflict of interest to arise with respect to these attorneys' prior (and ongoing) representation of the Sheriff in other actions relating to immigration enforcement. ER 53-54; *see* SER 237, SER 197-236, SER 194.

Sheriff Arpaio testified in the contempt proceedings below that the information that Montgomery had provided was "junk." ER 139. The record also included an email communication in which Sheriff Arpaio stated that Klayman's representation of Zullo and Montgomery "create[s] a conflict here in Arizona." ER 1232. Thus, the District Court concluded that there would be a conflict of interest if Klayman and Moseley simultaneously represented both Sheriff Arpaio and Montgomery in the same lawsuit. *See* ER 53-54.

The District Court also noted that Klayman might be called as a witness in the case, because the documents produced in the litigation included nonprivileged

correspondence between Mr. Klayman and Sheriff Arpaio and other MCSO employees. SER 110-112, SER 116-119; ER 243-245; ER 1227-1233. Thus, although evidence in the contempt proceedings has now closed, at the time the District Court denied the motions for *pro hac vice* admission, it was possible that Klayman could have been called to testify as a witness regarding these events and correspondence. ER 1048-1049.

In addition, Mr. Klayman had made "unwarranted attacks on . . . the sheriff's counsel" and others, which the District Court found "suggest[ed] that he would infuse invective" into the suit and improperly raise unrelated and extraneous issues into an already-protracted litigation. ER 1049-1050. For instance, in an August 10, 2015 reply filed in support of Mr. Klayman's *pro hac vice* application, Klayman stated that an email from Sheriff Arpaio's assistant "was probably dictated by Michele Iafrate [Sheriff Arpaio's counsel], who frankly has not represented the Sheriff zealously and within the bounds of the law." SER 055-093 at SER 058-059. The same pleading states that the email in question "strongly speaks of the Sheriff having a conflict with Mike Zullo"—an individual whom Mr. Klayman now also represents. *Id.*; *see also* SER 151-155 (No. 15-17269, Dkt. 7, appearance of Mr. Klayman as Mr. Zullo's attorney). Despite being invited to do so by the District Court, neither Mr. Klayman nor Mr. Moseley appeared to respond to the issues the District Court identified. ER 1046.

Finally, both Mr. Klayman and Mr. Moseley were not candid with the

District Court. For example, they failed to disclose to the District Court the

existence of the email correspondence directly between Mr. Klayman and Sheriff

Arpaio, which instead came to light through discovery from MCSO. ER 1222-

1233. Mr. Moseley represented to the District Court that his *pro hac vice*

application, accompanied by a two-page letter dated May 2, 2015 and a three-page

document entitled "Additional Information" were copied to all counsel, when that

was not the case. *See* ER 83-85, ER 183-184. Mr. Moseley also at first represented

to the Court that his purpose in intervening was not "to actually participate in the

conduct of this case, but merely to sponsor the filing of an Amicus Curiae brief for

Sheriff Joe Arpaio by attorney Larry Klayman of Freedom Watch." ER 84; *see*

*also* ER 183-184, ER 723-724, but then changed his tune in his "clarification" of

his motion for admittance, claiming instead that the statement was inadvertently

included and should be ignored, ER 466-478 at 466-67, and even withdrew his

prior letter to the Court. ER 468. And Mr. Klayman, while mentioning other

matters, failed to disclose to the District Court two decisions by U.S. courts of

appeals explaining in detail how Mr. Klayman had been found to have abused his

*pro hac vice* admissions in other cases. *See Baldwin Hardware Corp. v. FrankSu*

*Enter. Corp.*, 78 F.3d 550 (Fed. Cir. 1996); *MacDraw, Inc. v. CIT Group Equip.*

*Financing, Inc.*, 138 F.3d 33 (2d Cir. 1998). The Second Circuit found that Mr.

Klayman's challenge to a judge's impartiality based on the judge's ethnicity and the identity of the administration that appointed him was "insulting and smacked of intimidation," *MacDraw*, 138 F.3d at 38. The Federal Circuit affirmed a sanction against Mr. Klayman's firm for "unreasonably and vexatiously multiplying the proceedings." *Baldwin Hardware*, 78 F.3d at 554. Mr. Moseley also was not candid with the District Court in his application for admission *pro hac vice*. He failed to disclose that a Virginia Supreme Court decision regarding his earlier six-month suspension from practice in that Court revealed that Mr. Moseley's client had given a copy of a key document to Mr. Moseley, who then failed to disclose it and, instead of dropping the improperly-filed case, proceeded to conduct the proceeding without any basis, filing in excess of 80 pleadings and motions, used abusive discovery tactics, and engaged in unprofessional behaviors intended to intimidate and harass the adverse party. ER 195-198 (discussing *Moseley v. Va. State Bar, ex rel. Seventh Dist. Comm.*, 694 S.E.2d 586 (Va. 2010)).

As a result of the denial of his attorney's *pro hac vice* motion, Montgomery's motions to intervene and disqualify were stricken, and the merits of these motions were not considered by the District Court. ER 60; ER 193, ER 797. Montgomery filed a motion for reconsideration of the *pro hac vice* denials; and that motion was denied. ER 51-56. On May 11, 2015, Montgomery filed a petition for a writ of mandamus, asking this Court to compel the district court's recusal,

and further demanding that the District Court's orders be vacated and that Montgomery's documents, information, and intellectual property be returned to him. That petition was summarily denied by this Court. SER 156-191, SER 003 (*In re Dennis L. Montgomery*, No. 15-71443, Dkt. 1, 2 (9th Cir. May 12, 2015)).

### 4. Montgomery's Motion to Intervene in Defendants' Appeal Relating to Motions Seeking Recusal

On May 22, 2015, Sheriff Arpaio and Chief Deputy Sheridan filed their own motion to recuse the District Court judge. ER 246-264. That motion was denied, as was a motion to stay pending Ninth Circuit review. ER 11-50; ER 1121-1127 (denying Dkt. 1171, Sheriff Arpaio's motion to stay); *see also* SER 140-147 (plaintiff's opposition to motion to stay). Sheriff Arpaio and Chief Deputy Sheridan then filed a petition for a writ of mandamus, asking this Court to order the District Court judge's recusal. No. 15-72440, Dkt. 2; *see also* Dkt. 11 (opposition). Montgomery moved to intervene in that mandamus proceeding. No. 15-72440, Dkt. 4; *see also* Dkt. 9 (opposition). Arpaio's and Sheridan's petition was denied, and Montgomery's pending motions were denied as moot. No. 15-72440, Dkt. 14, 15.

Montgomery also filed a separate emergency motion in this Court to stay the District Court proceedings pending his appeal (No. 15-16440, Dkt. 5), relying on Arpaio's and Sheridan's disqualification mandamus petition. This Court denied Montgomery's motion to stay. No. 15-16440, Dkt. 11.

15

## STANDARDS OF REVIEW

### 1. Denial of Motions for *Pro Hac Vice* Admission to Practice

Whether to grant a *pro hac vice* application lies within "the discretion of the Court." D. Ariz. LRCiv 83.1(b)(2); *United States v. Ensign*, 491 F.3d 1109, 1113 (9th Cir. 2007); *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980); *Gallo*, 349 F.3d at 1185. "An order disqualifying or refusing to disqualify counsel will not be disturbed if the record reveals any sound basis for the district court's action." *Trust Corp. of Mont. v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983) (citing *Gas-A-Tron of Ariz. v. Union Oil Co. of Cal.*, 534 F.2d 1322, 1325 (9th Cir.), *cert. denied*, 429 U.S. 861 (1976)).

### 2. Nonparty Standing to Appeal

A nonparty seeking to appeal a district court order must have Article III standing to appeal. *State of Cal. Dep't of Soc. Servs. v. Thompson*, 321 F.3d 835, 846 (9th Cir. 2003); *Bryant v. Tech. Research Co.*, 654 F.2d 1337, 1343 (9th Cir. 1981) ("To have standing to appeal, a party must be aggrieved by the district court's order.") (internal quotations omitted). A nonparty has standing to appeal "only in exceptional circumstances." *Citibank Int'l.*, 809 F.2d at 1441. This Court has allowed such an appeal only when "(1) the appellant, though not a party, participated in the district court proceedings, and (2) the equities of the case weigh in favor of hearing the appeal." *Bank of Am. v. M/V Exec.*, 797 F.2d 772, 774 (9th Cir. 1986); *see also S. Cal. Edison Co.*, 307 F.3d at 804.

### 3. Denial of Motions for Intervention

A district court's denial of intervention as of right is reviewed *de novo*. *Id.* at 802; *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 582 (9th Cir. 1987). Denial of permissive intervention is reviewed for abuse of discretion. *Venegas v. Skaggs*, 867 F.2d 527, 529 (9th Cir. 1989). Where a nonparty wishes to appeal both denial of a motion for intervention and the merits of other orders of the district court, the nonparty may obtain review of the district court's other orders only if the court of appeals reverses the denial of intervention. *See, e.g.*, *United States v. City of Oakland, Cal.*, 958 F.2d 300, 301-02 (9th Cir. 1992) (no jurisdiction to consider appeal judgment on the merits, where district court had denied proponents' motion to intervene); *City of Milwaukee*, 144 F.3d at 531 (recognizing that until a movant is made a party, it cannot appeal from any orders in the case other than an order denying intervention); *Am. Lung Ass'n of N.J. v. Kean*, 871 F.2d 319, 325-27 (3d Cir. 1989) (party denied intervention in liability phase could not later appeal determination of liability; rather, its avenue of relief would have been to appeal denial of intervention).

### 4. Denial of Motions to Recuse or Disqualify a Trial Judge

Denial of a recusal motion is reviewed for abuse of discretion. *Price v. Kramer*, 200 F.3d 1237, 1252 (9th Cir. 2000) ("Federal judges are granted broad discretion in supervising trials, and a judge's behavior during trial justifies reversal

17

only if he abuses that discretion."); *see also Pesnell v. Arsenault*, 543 F.3d 1038, 1043 (9th Cir. 2008); *Jorgensen v. Cassiday*, 320 F.3d 906, 911 (9th Cir. 2003); *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1414 (9th Cir. 1995) (refusal to disqualify the sitting judge under 28 U.S.C. § 144 may be reversed only for an abuse of discretion). Denial of a motion to disqualify a trial judge from further proceedings is not a final order under 28 U.S.C. § 1291, nor one that should be treated as such under *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). *State of Wash.*, 573 F.2d at 1122 (citing cases). Where circumstances warrant, this Court may treat an attempt to appeal from a nonappealable order as a petition for writ of mandamus; however, it has declined to do so when there has been a previous mandamus proceeding, and any additional issues raised by the subsequent appeal could have been raised in the previous proceeding. *Id.*; *see also United States v. City of Chicago*, 870 F.2d 1256, 1259 (7th Cir. 1989) (dismissing appeal from refusal of district judge to recuse himself, where appellants had already filed a petition for mandamus, and another panel of the appellate court had already denied it).

## SUMMARY OF ARGUMENT

Montgomery's appeal should be dismissed in its entirety because this Court does not have jurisdiction to consider any of the issues he seeks to raise. The only questions reached by the District Court involved denial of Montgomery's

attorneys' *pro hac vice* motions. These orders were not appealable, final orders under 28 U.S.C. § 1291. *Supra* at 2-6. And all the other issues Montgomery raises, including the merits of his request for intervention, have never been properly raised before the District Court or considered by the District Court and therefore cannot be decided on this appeal.

Even if this Court had jurisdiction to consider the merits, Montgomery's appeal would fail as to each and every issue he raises.

First, as to the denials of *pro hac vice* admission to Montgomery's attorneys Mr. Klayman and Mr. Moseley, the District Court was presented with, and cited in its oral and written orders, ample evidence supporting its decision. That evidence included a conflict of interest in their simultaneous representation of both Montgomery and Sheriff Arpaio, the possibility that Klayman could have been required to testify as a witness in the pending proceedings, and had concealed or failed to be fully forthcoming about prior judicial findings of abuse of *pro hac vice* status and other misconduct. ER 1049. Denying the *pro hac vice* motions was well within the District Court's discretion, and did not violate due process or any other rights belonging to Montgomery, who is not a party in these proceedings.

Second, if the issue were properly presented before this Court, Montgomery would not meet the requirements for either permissive intervention or intervention as of right in the District Court. Montgomery claims that his rights were violated

19

by the District Court in relation to his alleged intellectual and other property, but the District Court issued no orders against Montgomery, nor did it issue any orders regarding property in his possession. All the property and testimony in this case relating to Montgomery came from Sheriff Arpaio or other MCSO employees, who paid Montgomery for these documents and information as part of his work as their confidential informant. Montgomery has no interest in the outcome of the ongoing contempt proceedings below, and thus had no "significant protectable interest" in them. In short, a denial of Montgomery's motion to intervene, had it been reached, would have been proper.

Finally, as a nonparty, Montgomery may not obtain this Court's review of the merits of his quest to recuse the District Court judge, the return of his alleged property, or any other issues, because, not having been ordered to do or refrain from doing anything by the District Court, and not having been granted the right to intervene by the District Court, he lacks standing to appeal any issue other than denial (had that been ordered) of his request to intervene. There are no "exceptional circumstances" creating appellate standing here, nor should this Court entertain, again, any request from Montgomery for mandamus relief. This Court has already considered and rejected previous petitions for mandamus relief by Montgomery. Nothing about this case would justify a different result now.

**ARGUMENT**

I.     **The Court Lacks Jurisdiction To Immediately Review These Denials of *Pro Hac Vice* Applications, Which Were, In Any Event, Properly Decided.**

    A.     **This Court Does Not Have Jurisdiction to Review the Denial of Klayman's and Moseley's *Pro Hac Vice* Applications.**

This Court lacks jurisdiction to consider the merits of the District Court's denial of Mr. Klayman's and Mr. Moseley's *pro hac vice* motions because such orders are not appealable final orders under 28 U.S.C. § 1291. Orders denying motions for admission are administrative, rather than "judicial," in nature, do not dispose of the underlying matters, and do not have characteristics warranting immediate appeal. *In re Appl.*, 728 F.3d at 1039-40 (no jurisdiction over appeal from orders that are administrative, rather than judicial, in nature); *Gallo*, 349 F.3d at 1176 (no appellate jurisdiction to review an order by the District Court denying admission to practice); *Flanagan*, 465 U.S. at 266-67 ("order disqualifying counsel lacks the critical characteristics that make orders . . . immediately appealable"); *Greger*, 657 F.2d at 1110-13 (pretrial order disqualifying counsel in a criminal case was not a "final decision" within collateral order doctrine and was therefore not appealable).

In *In re Application for Exemption from Electronic Public Access Fees*, this Court clarified that two characteristics of a district court order demonstrate that the order is "an administrative or ministerial order from which appeal is not available,"

21

rather than a "judicial" decision subject to appeal. 728 F.3d at 1039-40. First, an order may "arise[] from a non-adversarial proceeding" in which there is no appellee to oppose the request; second, the matter may be "wholly unconnected to pending litigation." *Id.* (citing *In re Carlyle*, 644 F.3d 694 (8th Cir. 2011); *In re Long*, 475 F.3d 880 (7th Cir. 2007); *Bense v. Starling*, 719 F.2d 241, 244 (7th Cir. 1983)). Although the proceeding below is adversarial with respect to *other* parties, both characteristics are present here, with respect to Montgomery and his attorneys. First, the contempt proceedings from which this appeal was taken are "adversarial" only between Plaintiffs and the Defendant-Appellees. Montgomery is not a plaintiff or defendant against any party (and was not even a witness) in these proceedings, and is not charged with contempt. The relief he was denied (admission of his out-of-state attorneys to practice in the District of Arizona) was purely administrative in nature, and did not reflect any adjudication of the presence or absence of his alleged rights to relief in the District Court (*i.e.*, his requests to intervene, for recusal, or for the return of his alleged property). Second, Montgomery's counsel's eligibility for *pro hac vice* admission to practice was wholly unconnected to the substance of the pending contempt proceeding, which Montgomery asserts "should have absolutely nothing to do with [him]." Br. at 5. The facts of this case demonstrate the administrative nature of these orders.

22

In addition, the orders denying *pro hac vice* admission did not dispose of the case below, in which Montgomery remains free to seek to intervene; he is simply required to do so either *pro se* or through counsel not subject to the conflicts and conduct issues that disqualified Mr. Klayman and Mr. Moseley from representing him. ER 51-56; ER 60; ER 193, ER 797. Accordingly, the District Court's orders were not immediately appealable, and the present appeals can and should be dismissed for this reason as well. *Flanagan*, 465 U.S. at 266-68 (even in a criminal case, where the Sixth Amendment right to counsel applies, an order disqualifying a defendant's counsel is not immediately appealable, and cannot be reviewed until trial is complete); *see also Gallo*, 349 F.3d at 1176 (denial of a petition for admission to a district court bar is neither a final order appealable under 28 U.S.C. § 1291 nor an interlocutory order appealable under 28 U.S.C. § 1292); *Firestone*, 449 U.S. at 375 (orders denying motions to disqualify opposing party's counsel not appealable prior to final judgment); *Greger*, 657 F.2d at 1113 (pretrial order disqualifying counsel in a criminal case was not a "final decision" and was not appealable). An appeal regarding the denial of Montgomery's request to be represented by specific counsel could be taken up only after a successful intervention effort established Montgomery's ability to intervene in the case below. But Montgomery failed to file a motion to intervene through other, admitted counsel or *pro se*, after the Court properly denied his would-be attorney's

application for admission *pro hac vice*. The District Court's effective denial of his

motion to intervene, if one is assumed to have occurred, was thus on procedural

grounds and is therefore not appealable. *City of Milwaukee*, 144 F.3d at 528-29.

And if Montgomery were to file a motion to intervene, and that motion to intervene

were denied *on the merits* and upheld on appeal, he must begin by appealing the

denial of the motion to intervene, and will lack standing to appeal any other order

of the District Court, including the *pro hac vice* motions, until such time as he

establishes standing to appeal. *See S. Cal. Edison*, 307 F.3d at 804 (appellant

properly denied intervention does not have standing to appeal the district court's

other orders); *see also City of Oakland, Cal.*, 958 F.2d at 301-02; *City of*

*Milwaukee*, 144 F.3d at 528-31; *Perciasepe*, 714 F.3d at 1328.

### B. If Appealable, the Denials of Klayman and Moseley's *Pro Hac Vice* Motions Were Properly Decided and Should Be Affirmed.

Montgomery asserts that the District Court erred in denying him his choice

of counsel, Br. at 20, but he has no unlimited constitutional right to counsel of his

choice in this civil case, just has he has no constitutional right to have an out-of-

state lawyer admitted *pro hac vice* to represent him. *United States v. Sardone*, 94

F.3d 1233, 1236 (9th Cir. 1996) (holding that there is generally "no constitutional

right to counsel in civil cases"); *Hedges v. Resolution Trust Corp.*, 32 F.3d 1360,

1363 (9th Cir. 1994) ("there is no absolute right to counsel in civil proceedings")

(citing *Ivey v. Board of Regents*, 673 F.2d 266, 269 (9th Cir. 1982)); *see also In re*

*United States*, 791 F.3d 945, 956-58 (9th Cir. 2015) (discussing district courts'

discretion to deny *pro hac vice* admissions in civil cases).[6] The District Court

refused to admit Mr. Klayman and Mr. Moseley based on its judgment that

admission to serve as Montgomery's counsel in this case would be harmful to the

standards of the profession and the orderly administration of justice. ER 53-54.

This judgment was well within the District Court's discretion for a number of

reasons.

First, the District Court properly denied the applications of Klayman or

Moseley because their representation of Montgomery in this case would have

created a conflict of interest with their existing client, Sheriff Arpaio, based on

Arizona's local ethics rules. ER 52-54, 1046-1050; *see supra* at 10-13; *Simmons v.

Navajo Cnty.*, 609 F.3d 1011, 1017 (9th Cir. 2010) ("District courts have broad

discretion in interpreting and applying their local rules.") (quotation omitted). The

District Court explained at length its bases for finding a conflict under the Arizona

Rules of Professional Conduct. ER 53-54; *see also* ER 139-140, SER 148-150.

Among other things, under the Arizona rules, a lawyer may not represent a client if

---

[6] All the cases Montgomery cites in support of the proposed "entitlement" to
counsel, *see* Br. at 21-22, Supp. Br. at 17-18, are inapt, as they relate to the Sixth
Amendment right to counsel in a criminal case. Moreover, even in a criminal case,
the right is not absolute, and "could be revoked to serve a 'compelling purpose,'
such as 'the efficient and orderly administration of justice.'" *Ensign*, 491 F.3d at
1114 (citation omitted).

the representation involves a concurrent conflict of interest, such as where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client . . . ." Ariz. E.R. 1.7(a) (Arizona rule governing conflicts of interest as to current clients). See also D. Ariz. LRCiv 83.1(b)(2) ("Attorneys admitted to practice pro hac vice must comply with the Rules of Practice of the United States District Court for the District of Arizona"); D. Ariz. LRCiv 83.2(e) ("The 'Rules of Professional Conduct,' in the Rules of the Supreme Court of the State of Arizona, shall apply to attorneys admitted or otherwise authorized to practice before the United States District Court for the District of Arizona."); *In re Cnty. of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000) (federal courts "apply state law in determining matters of disqualification"). Yet the questions previously raised by Sheriff Arpaio's testimony, and by the documents produced by MCSO, brought Montgomery's credibility and the facts surrounding his MCSO-funded investigation of the District Court into the case, *supra* at 10-15, making it impossible for one attorney (or firm) to fulfill his duty of loyalty to both Montgomery and Arpaio in the context of this litigation.[7] ER 53-54.

---

[7] Montgomery argues that there is "no basis" for a conflict of interest simply because Klayman and his firm represent Arpaio outside of Arizona rather than in the state. Supp. Br. at 15-16. But Sheriff Arpaio's email to Mr. Klayman clearly referred to a conflict arising out of Klayman's representation of Arpaio in the out-of-state case. ER 1232. Montgomery also implied that "the trial judge compel[led] (continued…)

These and all the applicable ethics rules are binding on the parties and the Court, and have the force of law. *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010) (local rules have "the force of law"); *Prof'l Programs Grp. v. Dept. of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994) (local rules "are binding upon the parties and upon the court"); *Cole v. U.S. Dist. Ct. for the Dist. of Idaho*, 366 F.3d 813, 822 (9th Cir. 2004) (ethics rules apply to attorneys admitted *pro hac vice* just as they do to other counsel). The conflict of interest alone was sufficient to justify the District Court's denial of the *pro hac vice* motions.

Montgomery cites *Gas-A-Tron of Arizona* for the proposition that the relevant test for disqualification is whether the attorney's other representation is "substantially related" to the current representation. Br. at 23 (citing *Gas-A-Tron of Ariz.*, 534 F.2d at 1325). But the Ninth Circuit has since clarified that "[s]ubstantiality is present if the factual contexts of the two representations are similar or related," and has further held that "[i]f there is a reasonable probability that confidences were disclosed which could be used against the client in later, adverse representation, a substantial relation between the two cases is presumed." *Trone*, 621 F.2d at 998. Those conditions are met here. Klayman and Moseley represent Sheriff Arpaio in other proceedings relating to immigration enforcement,

---

one person against their will to speak ill of another" here, but there is no evidence that the District Court did anything of the kind.

and there is a reasonable probability that Sheriff Arpaio has disclosed confidences relating to his positions on immigration enforcement and other matters to Klayman and Moseley. Were Montgomery to be represented by Klayman or Moseley in this matter, he would be entitled to expect that his counsel "will use every skill, expend every energy, and tap every legitimate resource" on his behalf, including the utilization of anything gained by Klayman or Moseley's possession of the Sheriff's confidence. *Id.* at 998-999. And *Gas-A-Tron* is distinguishable on its facts, as the law firm in question had been disqualified due to one of its associates' previous work for a large law firm that had represented the adverse party, where the associate flatly denied seeing any files other than those relating to the cases assigned to him, and denied that he received any confidential information from anyone about the adverse party, while he was employed at his previous firm. 534 F.2d at 1324-25. Here, in contrast, Mr. Klayman and Mr. Moseley *still* represent Sheriff Arpaio in other actions relating to immigration enforcement, and therefore are very likely (and indeed, likely are required) to communicate with the Sheriff regarding his views on and personal efforts to effect the deportation of individuals whose presence in the country is unauthorized—subject matter that overlaps with issues central to the District Court's contempt proceedings (namely, Sheriff Arpaio's refusal to comply with the District Court's preliminary and supplemental injunctive orders to cease and desist from detaining individuals on suspicion of

illegal presence, *see* SER 004-005, SER 011-017). Klayman and Moseley do not (indeed, cannot) deny that they remain privy to Sheriff Arpaio's confidential information and views on these issues, and as such they are prohibited from representation adverse to him here, where substantially related subject matter is directly at issue.

Second, when the District Court decided the *pro hac vice* motions, it was possible that Mr. Klayman might be required to testify as a witness in the contempt proceedings, as he had had direct communication with both Sheriff Arpaio and other witnesses regarding Montgomery's investigations. ER 1227-1233; ER 1049. This, too, would have been a violation of Arizona's local ethics rules, *see* Ariz. E.R. 3.7, and further supported the District Court's refusal to admit Mr. Klayman to practice. This basis for the District Court's order is left wholly unaddressed by Montgomery's opening briefs.

Third, Mr. Klayman's and Mr. Moseley's conduct in this litigation, which included unnecessary attacks on other counsel, *see* SER 058-059 as well as their failure to be fully candid with the District Court about their conduct in other cases, *supra* at 10-15, provided ample additional bases for the District Court's decision that denying their *pro hac vice* motions was necessary to preserve the efficient and orderly administration of justice. *See United States v. Ries*, 100 F.3d 1469, 1471 (9th Cir. 1996) (where "an of out-of-state attorney strongly suggests through his

29

behavior that he will neither abide by the court's rules and practices—thus impeding the 'orderly administration of Justice'—nor be readily answerable to the court," denial of *pro hac vice* status is appropriate) (quotation omitted). The primary responsibility for controlling the conduct of attorneys practicing before the District Court rests with that Court. *Trust Corp. of Mont.*, 701 F.2d at 87 (citing *In re Coordinated Pretrial Proceedings, etc.*, 658 F.2d 1355, 1358 (9th Cir. 1981), *cert. denied*, 455 U.S. 990 (1982); *Trone*, 621 F.2d at 999). The District Court's exercise of discretion to prevent violations of the Arizona ethics rules was well within its discretion. Accordingly, this Court, if inclined to consider the merits of the *pro hac vice* denials, should find the orders within the District Court's discretion. *See, e.g.*, *Ensign*, 491 F.3d at 1114 (right to counsel "could be revoked to serve a compelling purpose, such as the efficient and orderly administration of justice.") (quotations and citation omitted).

Where, as here, the denial of the motions for *pro hac vice* admission were based on criteria reasonably related to promoting the orderly administration of justice, including the District Court's desire to prevent representation under circumstances involving a conflict of interest, and to ensure that the case would be conducted within the local rules and according to the standards of the profession, *see In re United States*, 791 F.3d at 957, the District Court's orders, if considered on the merits, should be affirmed.

30

**II.    Montgomery's Motion To Intervene Is Not Properly Before This Court, and If It Were, He Would Fail on the Merits.**

>     **A.    The Merits, If Any, of Montgomery's Request to Intervene Are Not Appealable Because The District Court Has Not Decided It.**

As a threshold matter, the District Court has not reached the merits of the motion to intervene. ER 193, ER 797 (declining to rule on motion to intervene, because Montgomery could "hire any other attorney that doesn't present the conflict" shared by Klayman and Moseley). This Court therefore does not have jurisdiction to consider the merits of Montgomery's quest to intervene in the pending District Court proceedings. *In re Landmark Fence Co.*, 801 F.3d at 1104 (holding that where appellate jurisdiction was lacking due to non-final nature of district court's order, the court would decline to address argument that should be decided, in the first instance, by the trial court); *City of Milwaukee*, 144 F.3d at 528-29 (denial of motion to intervene, due to motion's failure to comply with procedural requirements, did not resolve definitively whether putative intervenor should be allowed to intervene, and was therefore not a final decision within the meaning of 28 U.S.C. § 1291).

>     **B.    Montgomery Did Not Meet the Requirements for Intervention.**

This Court should not consider the merits of Montgomery's intervention motion. But, if this Court were to consider them, Montgomery's

appeal would fail because he did not meet the requirements to intervene in the District Court proceedings, either as of right or permissively.

### 1.    Intervention as of Right

An applicant for intervention as a matter of right must satisfy four requirements, namely that: "(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *S. Cal. Edison Co.*, 307 F.3d at 802 (citing *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)); Fed. R. Civ. P. 24(a)(2). The applicant has the burden of showing that all of the requirements are met; failure to satisfy any requirement is fatal. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009); *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006).

Montgomery cannot meet that burden in this case, because he did not demonstrate that he has a significant protectable interest in the contempt proceedings. "An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). The relationship

requirement is met "if the resolution of the plaintiff's claims actually will affect the applicant." *Id.* at 410. Montgomery asserts that he seeks to protect "property rights," Br. at 6-10, supporting that assertion with unsupported allegations that the documents provided by MCSO to the District Court are "mostly the same documents, data, and things" previously examined by a Nevada District Court. Br. at 8-9. But there is no support in the record for these claims.

What the record does show is that no property in Montgomery's possession has been ordered seized or confiscated, and all the information or documents in MCSO's possession that Montgomery provided to MCSO were discoverable and were produced subject to protective orders. ER 2 (ordering procedures subject to "strict 'claw back' principles" for privileged material); ER 5 (ordering materials to be held "in a secure location"); ER 199 (ordering parties not to disclose the Montgomery documents "in any way" or "to anybody else"); ER 218 (prohibiting the U.S. Government reviewers from disseminating the materials to any third party); *see also* ER 836-838, ER 1048. Moreover, the documents that Montgomery gave to MCSO were part of an investigation that MCSO commissioned and paid for. They were in MCSO's possession for months. Montgomery has not claimed that MCSO has any obligation to give them back, and, if it did so claim, this appeal would not be the right forum for him to enforce that obligation.

At a July 20, 2015 status conference before the District Court, Mr. Klayman was unable to define any property interest of Montgomery's in the information being disclosed, other than by citing rulings by a Nevada court that held Montgomery had certain property interests in documents at issue in the Nevada litigation, as he argues on appeal. ER 1161-1163; *see also* Br. at 8-10 (discussing Nevada case). But, as the District Court pointed out, the Nevada orders were issued in 2006 or 2007, before Montgomery allegedly took the purported CIA data at issue in *this* case in 2009-2010 and provided it to MCSO in 2014. ER 1162-1163. Mr. Klayman, whom the District Court offered a chance to speak notwithstanding the denial of his *pro hac vice* motion, gave no basis for concluding that Montgomery had any property interest in the data at issue in *this* case. ER 1163 ("I don't have that information, Your Honor. I don't have it."). In short, Montgomery has demonstrated no relationship between his theoretical property rights and the civil contempt proceedings against Sheriff Arpaio and others in the District Court. *Donnelly*, 159 F.3d at 410 ("An applicant generally satisfies the 'relationship' requirement only if the resolution of the plaintiff's claims actually will affect the applicant."). If these materials are indeed Montgomery's property, he should sue MCSO to get them back, rather than trying to force his (and his attorneys') way into this lawsuit. *See, e.g.*, SER 055-093; *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (intervenor "is not permitted to inject new, unrelated issues

34

into the pending litigation); *S. Cal. Edison*, 307 F.3d at 804 ("The intervention rule is . . . not intended to allow the creation of whole new lawsuits by the intervenors") (citing *Donnelly*, 159 F.3d at 412).

Montgomery has not been ordered to do or refrain from doing anything by the District Court. And testimony regarding Montgomery and his investigation has already occurred, and documents about him, or provided to MCSO by him, are already in the public record. The resolution of the contempt charges will not change the existence of that evidence, nor will it resolve Montgomery's ownership claim, if he ever makes one, to the materials and information that he provided to MCSO. Indeed, the resolution of the contempt proceedings will not affect Montgomery at all. For all these reasons, a denial of intervention as of right, if deemed ripe for review by this Court, should be affirmed.

### 2.    Permissive Intervention

"[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *City of Los Angeles*, 288 F.3d at 403 (quoting *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996)). "Even if an applicant satisfies those threshold requirements, the

district court has discretion to deny permissive intervention." *S. Cal. Edison Co.*, 307 F.3d at 803 (quoting *Donnelly*, 159 F.3d at 412).

The District Court here would have been well within its discretion to deny permissive intervention, had it reached the merits. For example, in exercising its discretion, a district court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. *Mishewal Wappo Tribe of Alexander Valley v. Salazar*, 534 Fed. Appx. 665, 667 (9th Cir. 2013) (citing Fed. R. Civ. P. 24(b)(3); *Perry*, 587 F.3d at 955). Montgomery's intervention would have created collateral litigation over his rights vis-à-vis MCSO and Sheriff Arpaio and their possession, and disclosure, of the information that he had provided to them. Montgomery himself admits that his concerns are completely unrelated to the claims and defenses in the main action, which further supports denial of his motion to intervene. Br. at 5 ("This case should have absolutely nothing to do with Dennis L. Montgomery. . . . None of this [case] has the remotest relevance to Dennis Montgomery."); Br. at 24 ("nothing concerning Montgomery is material in *Melendres v. Arpaio*"); Supp. Br. at 8 (incorporating descriptions of facts as set forth in Montgomery's Opening Brief). And Montgomery never demonstrated independent grounds for jurisdiction. For all these reasons, permissive intervention, if it assumed to have been denied on the merits, was properly denied.

**III.** **Montgomery Does Not Have Standing to Obtain Appellate Review of Any Orders of the District Court.**

An appellant who was properly denied intervention in the district court does not have standing to appeal the district court's other orders. *S. Cal. Edison*, 307 F.3d at 804; *City of Oakland, Cal.*, 958 F.2d at 301-02 (no jurisdiction to consider appeal of judgment on the merits, where district court had denied proponents' motion to intervene); *City of Milwaukee*, 144 F.3d at 531 (until a movant is made a party, it cannot appeal from any orders other than an order denying intervention); *Perciasepe*, 714 F.3d at 1328 ("party unsuccessfully appealing a denial of intervention is not a 'party' [and] may not obtain review of any district court holding other than the denial of intervention"). Accordingly, even if the District Court is deemed to have denied Montgomery's motion to intervene, as Montgomery appears to argue, Montgomery does not have standing to seek review of any other order of the District Court, including the District Court's denials of reconsideration, denials of the *pro hac vice* motions of Moseley and Klayman, and denials of motions for disqualification, as well as any matters "concerning the presiding judge's orders in proceeding about enforcement of the main claims under federal law and the Constitution" which Montgomery presently seeks to appeal. *See* Br. at 2-3, Supp. Br. at 2-3.

A nonparty who has *not* intervened in the proceedings below has standing to appeal only in "exceptional circumstances," where (1) the nonparty has

participated in the district court proceedings, and (2) the equities weigh in favor of hearing the appeal. *Hilao*, 393 F.3d at 992; *S. Cal. Edison*, 307 F.3d at 804. Those circumstances and equities are not present here. Montgomery seeks to bring to a halt a years-long effort to remedy constitutional violations by MCSO and Sheriff Arpaio simply because he desires to strike unflattering testimony about his work by MCSO witnesses, to assert alleged "property rights" over material he previously provided to MCSO, and for which he was paid, and to seek to recuse the District Court judge. There is no basis for the relief Montgomery requests, and these are not "exceptional circumstances" justifying any standing as a nonparty to appeal.

## IV.    Even if Montgomery Had Standing to Appeal, The Remaining Issues He Raises Are Not Justiciable, and Would Fail on the Merits.

The other issues Montgomery seeks to raise in this appeal are not justiciable and lack merit.

### A.    Denial of the Motion to Recuse Is Not Immediately Appealable, and Recusal Would Be Unwarranted Here.

There is no immediate appeal from a denial of a motion to disqualify a trial judge. *See, e.g.*, *State of Wash.*, 573 F.2d at 1122. Because this case has not reached its conclusion in the District Court, the recusal issue is not appealable at this time. And, while this Court can treat appeals from nonappealable orders as requests for mandamus relief, it should decline to do so in this case, because this Court has already denied Montgomery's mandamus petition seeking the District

Court's disqualification and also denied his motion to stay the District Court proceedings pending Arpaio's and Sheridan's separate mandamus petition seeking the same. *Supra* at 2-6, 14-15; *see State of Wash.*, 573 F.2d at 1123 (order denying motion to disqualify a district court judge is not an appealable interlocutory order, but appellate court may treat an attempt to appeal from a nonappealable order as a petition for writ of mandamus); No. 15-72440, Order, Dkt. 14, at 2 (denying request for mandamus relief, and finding the District Court's July 10, 2015 order denying motion for recusal was not clearly erroneous as a matter of law); SER 003 (No. 15-71433, Dkt. 2 (denying request by Montgomery for mandamus relief)).

If the denial of the recusal motion were ripe for this Court's review, Montgomery's appeal would still fail, because that denial was not an abuse of discretion. *See*, *e.g.*, SER 002 ("The district court's July 10, 2015 order denying petitioners' motion for recusal is not clearly erroneous as a matter of law."). "A judge's participation during trial warrants reversal 'only if the record shows actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality.'" *Price*, 200 F.3d at 1252. Nothing in this record shows actual bias or supports any impression of advocacy or partiality by the District Court, which repeatedly imposed protections over the documents MCSO obtained from Montgomery, including orders not to disclose the materials and "claw back" allowances for documents determined to be privileged. *See, e.g.*, ER 2 (ordering

39

procedures subject to "strict 'claw back' principles" for privileged material); ER 5 (ordering materials to be held "in a secure location"); ER 199 (ordering parties not to disclose the Montgomery documents "in any way" or "to anybody else"); ER 218 (prohibiting the U.S. Government reviewers, who were allowed to examine the 50 hard drives to determine whether they were really classified information taken from the CIA, from disseminating the materials to any third party). And this Court has already considered the District Court's conduct in the context of the request for mandamus relief filed by Sheriff Arpaio, and found this case not to warrant such relief. SER 001-002. Montgomery points to nothing warranting this Court's repeat consideration of these issues now.

### B. Montgomery's Claims Regarding "Property Rights" Are Not Reviewable, And Would Fail If Considered on the Merits.

For the reasons set forth above, Montgomery's claims to theoretical "property rights" would fail on the merits. *See supra*, 33-36. But at this stage, the merits have not been reached by the District Court, because Mr. Klayman failed to put forward any argument or evidence in support of Montgomery's claims to these alleged property rights in response to the District Court's specific orders directing Mr. Klayman to provide authorities in support of his arguments, and Montgomery has not sought to renew his request to intervene for this purpose. The existence and adjudication of alleged property rights to any information possessed by MCSO should be considered, if at all, in a suit between Montgomery and MCSO, not in

this appeal from contempt proceedings wholly unrelated to Montgomery's allegations. But if the alleged property rights were considered on the merits, Montgomery would still not be entitled to any relief, as he has not shown that he has any interest in the underlying "intellectual property," nor that any act of the District Court or of the parties to the District Court proceedings has improperly impaired that interest, given that he provided the information to MCSO in return for payment as a confidential informant.

### C. Montgomery's Unsupported Factual Allegations Should be Disregarded, as Should His Allegations Regarding Facts that Postdate the Orders Denying *Pro Hac Vice* Admission.

In his opening briefs, Montgomery makes a number of unsupported and often speculative factual allegations about Montgomery's circumstances in support of his arguments, *e.g.* Br. at 7, 16, 20-21, Supp. Br. at 5-6, 16-17. These allegations are irrelevant, as they either postdate the District Court's decisions on the motions for *pro hac vice* admission, or are outside the evidence of record that had been presented to the District Court prior to its rulings on those motions. This Court should disregard *all* the unsupported statements in Montgomery's briefs as insufficient under Fed. R. App. P. 10(b)(2).[8] In addition, in reviewing a district

---

[8] Montgomery's unsupported statements include that the documents at issue are "mostly the same documents" considered by the U.S. District Court for the District of Nevada in another case, Br. at 8, that he turned these documents over to MCSO "under contractual obligations and an agreement that these items will be preserved (continued…)

court's order denying a motion to intervene or for *pro hac vice* admission, the Court should look to the procedural posture of the case as it existed on the date the motions were denied. *Cf. League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1303 n.2 (9th Cir. 1997). The District Court denied Mr. Moseley's motion for reconsideration on July 10, 2015, ER 51-56, and denied Mr. Klayman's motion for admission in an August 11, 2015 oral order. ER 1049-1050. Thus, for purposes of this appeal, Montgomery's statements regarding his present health or financial circumstances, Br. at 16, 20-21, Supp. Br. at 16-17, should be disregarded, as these allegations are unsupported by evidence of record before the District Court at the time the *pro hac vice* motions were denied, and are therefore irrelevant to consideration of the issues raised in this appeal. The subject matter of the September-November 2015 contempt hearing dates, which Montgomery characterizes without support, *see* Br. at 6, is also irrelevant to consideration of the

---

as confidential," Supp. Br. at 12-13, that he "is both indigent and medically disabled, perhaps terminally ill" and "would suffer unusual hardship" from denial of the *pro hac vice* motions, Br. at 20, Supp. Br. at 12, 16, that he "could not afford regular counsel," Br. at 21, Supp. Br. at 17, and that "it would be extremely difficult to find a local lawyer." *Id.* He also implies, inaccurately and without support, that "the trial judge compel[led] one person to speak ill of another." Supp. Br. at 18. Montgomery also fails to include the District Court docket sheet in his Excerpts of Record, providing instead a "History" of the docket sheet; for this reason, Plaintiffs include the District Court docket sheet in the Supplemental Excerpts of Record. SER 246-467.

District Court's rulings on the *pro hac vice* motions, which predated the continued contempt hearing dates.[9]

## CONCLUSION

For all these reasons, this appeal should be dismissed for lack of jurisdiction, or, in the alternative, the District Court's orders regarding Mr. Montgomery and denying the applications for *pro hac vice* admission by his counsel should be affirmed.

Dated: January 20, 2016

By */s/ Michelle L. Morin*
Stanley Young
syoung@cov.com
Michelle L. Morin
mmorin@cov.com
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

Dan Pochoda
dpochoda@acluaz.org
ACLU FOUNDATION OF
ARIZONA
3707 N. 7th St., Ste. 235
Phoenix, AZ 85014
Telephone: (602) 650-1854

---

[9] Likewise, although the factual record relating to and demonstrating the conflict of interest that would result from Klayman and Moseley's simultaneous representation of Montgomery and Sheriff Arpaio continued to develop after August 11, 2015, those facts are not before this Court.

Facsimile: (602) 650-1376

Anne Lai
alai@law.uci.edu
401 E. Peltason, Suite 3500
Irvine, CA 92697-8000
Telephone: (949) 824-9894
Facsimile: (949) 824-0066

Cecillia D. Wang
cwang@aclu.org
ACLU FOUNDATION
Immigrants' Rights Project
39 Drumm Street
San Francisco, California 94111
Telephone: (415) 343-0775
Facsimile: (415) 395-0950

Andre Segura
asegura@aclu.org
ACLU FOUNDATION
Immigrants' Rights Project
125 Broad Street, 17th Floor
New York, NY 10004
Telephone: (212) 549-2676
Facsimile: (212) 549-2654

Jorge Martin Castillo
jcastillo@maldef.org
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL
FUND
634 South Spring Street, 11th Floor
Los Angeles, California 90014
Telephone:  (213) 629-2512
Facsimile:  (213) 629-0266

*Attorneys for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7), I certify that this brief complies with the type-volume limitation. Based on the word count function of the word-processing system used to prepare the brief, this brief contains 11,129 words, excluding the caption, tables, signature blocks, and certificates.

Date: January 20, 2016                      */s/ Michelle L. Morin*
                                            MICHELLE MORIN

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2016, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: January 20, 2016                      */s/ Michelle L. Morin*
                                            MICHELLE MORIN

45

## STATEMENT OF RELATED CASES

The following cases are related. All arise out of the same District Court case:

*Melendres v. Maricopa County (Defendant-Appellant) and Arpaio*, Case No. 15-15996 (Pending). Appeal by Maricopa County of imputation of liability to Maricopa County in relation to District Court orders between October 2009 and April 15, 2015, including the supplemental permanent injunction provisions affirmed in *Melendres II*.

*Melendres et al. v. Arpaio*, Case No. 13-16285 (Pending, writ of certiorari denied); *Melendres et al. v. Arpaio*, Case No. 13-17238 (Pending, consolidated with No. 13-16285). *See Melendres v. Arpaio*, 695 F.3d 990, 994 (9th Cir. 2012) ("*Melendres I*") (affirming District Court's pre-trial preliminary injunction); *Melendres v. Arpaio*, 784 F.3d 1254, 1259-60 (9th Cir. 2015) ("*Melendres II*") (affirming, in large part, the District Court's supplemental permanent injunction and substituting Maricopa County for Maricopa County Sheriff's Office as the proper jural entity).

*In re: Dennis L. Montgomery v. U.S. District Court v. County of Maricopa*, Case No. 15-71433 (Terminated). Petition by putative intervenor Dennis Montgomery for mandamus relief, seeking recusal of the District Court and stay of proceedings. (Denied on May 12, 2015).

*In re Arpaio and Sheridan v. Dennis Montgomery v. Melendres et al.*, Case No. 15-72440 (Terminated). Petition by Defendants Sheriff Arpaio and Chief Deputy Sheridan for mandamus relief, seeking recusal of the District Court and stay of proceedings. (Denied on Sept. 15, 2015).

*Melendres et al. v. Zullo (Movant-Appellant) v. Maricopa County and Joseph Arpaio*, Case No. 15-17269 (Pending). Appeal by nonparty witness Michael Zullo from District Court denial of Mr. Zullo's motions for protective order and motion for extension of time to retain counsel, and from discovery order issued against counsel for Defendant Sheriff Arpaio.


Date: January 20, 2016                    */s/ Michelle L. Morin*
                                          MICHELLE MORIN