CASE NOS. 15-16626 and 15-16440 (Consolidated)

IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

MANUEL de JESUS ORTEGA MELENDRES,
*et al.*, Plaintiffs – Appellees,

v.

JOSEPH M. ARPAIO, Sheriff of Maricopa County,
Arizona; *et al.*, Defendants – Appellees,

and

DENNIS L. MONTGOMERY, Appellant - Putative Intervenor

---

From the United States District Court For the District of Arizona
The Honorable G. Murray Snow, Presiding
Case No. CV-07-2513

---

**Emergency Motion Under Circuit Rule 27-3**

<u>APPELLANT DENNIS MONTGOMERY'S RENEWED REQUEST
TO EXPEDITE APPEAL ON EMERGENCY BASIS
WITH INCORPORATED MEMORANDUM OF LAW</u>

---

Larry Klayman, Esq.
FREEDOM WATCH, INC.
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

Attorney for Appellant - Putative Intervenor Dennis L. Montgomery

i

<u>**Circuit Rule 27-3 Certificate**</u>
Emergency Motion

Pursuant to Local Circuit Rule No. 27-3, Appellant hereby certifies:

1) **The telephone numbers, e-mail addresses, and office addresses of the attorneys for the parties are:**

        Stanley Young, Esq.
        Andrew Carl Byrnes, Esq.
        333 Twin Dolphin Road
        Redwood Shores, CA 94065
        syoung@cov.com
        650-632-4700
        Attorneys for Plaintiffs

        Daniel Pochoda, Esq.
        ACLU FOUNDATION OF ARIZONA
        3707 N. 7th Street, Suite 235
        Phoenix, AZ 85014
        dpochoda@acluaz.org
        602-650-1854
        Attorney for Plaintiffs

        Cecilia D. Wang
        ACLU FOUNDATION
        IMMIGRANTS' RIGHTS PROJECT
        39 Drumm Street
        San Francisco, CA 94111
        cwang@aclu.org
        415-343-0775
        Attorney for Plaintiff Melendres

        Thomas P. Liddy, Esq.
        CIVIL SERVICES DIVISION
        MARICOPA COUNTY ATTORNEY'S OFFICE
        222 North Central Avenue, Suite 1100
        Phoenix, AZ 85005

liddyt@mcao.maricopa.gov
602-506-8541
Attorney for Defendant Joseph Arpaio and Maricopa County
Sheriff's Office

Michele M. Iafrate, Esq.
IAFRATE & ASSOCIATES
649 North Second Avenue
Phoenix, AZ 85003
miafrate@iafratelaw.com
602-234-9775
Attorney for Defendant Joseph Arpaio and Maricopa County
Sheriff's Office

Deborah L. Garner, Esq.
IAFRATE & ASSOCIATES
649 North Second Avenue
Phoenix, AZ 85003
dgarner@iafratelaw.com
602-234-9775
Attorney for Defendant Joseph Arpaio and Maricopa County
Sheriff's Office

Mr. John Masterson
Mr. Justin M. Ackerman
Mr. Joseph J. Popolizio
JONES SKELTON & HOCHULI, PLC
2901 N. Central Avenue, Suite 800
Phoenix, Arizona 85012-2728
Telephone: 602-263-1700
jmasterson@jshfirm.com
jpopolizio@jshfirm.com
jackerman@jshfirm.com
Attorney for Defendant Sheriff Joseph Arpaio

Andre Segura, Esq.
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Fl.
New York, NY 10004

asegura@aclu.org
212-549-2676
Attorney for Plaintiffs

Anne Lai
UCI School of Law
401 E. Peltason Drive. Suite 3500
Irvine, CA 92616
alai@law.uci.edu
949-824-9894

Jorge M. Castillo
MALDEF
634 S. Spring Street, 11th Fl.
Los Angeles, CA 90014
jcastillo@maldef.org
213-629-2512
Attorney for Plaintiffs

Richard K. Walker
WALKER & PESKIND, PLLC
16100 N. 71st Street, Suite 140
Scottsdale, AZ 85254-2236
rkw@azlawpartner.com
480-483-6336
Attorney for Defendant Maricopa County

2) **Facts showing the existence and nature of the claimed emergency**.

The emergency was created on May 13, 2016, and could have been

avoided by an earlier decision by this Court, by forbearance in the trial court,

or by a stay of the trial court proceedings. Yet disregarding opportunities to

avoid this emergency and warnings that it could arise, the U.S. District Court

for the District of Arizona ("District Court") created the emergency.

In his May 13, 2016, **Findings of Facts and Order Setting a**

**Hearing for May 31, 2016**, attached as Exhibit 1, the Honorable G. Murray Snow ("Judge Snow"), on page 162, found Arizona's Maricopa County Sheriff Joseph Arpaio ("Sheriff Arpaio") and Maricopa County Sheriff's Office ("MCSO") Chief Deputy Gerard Sheridan in civil contempt.

Yet, also, Judge Snow set a hearing on May 31, 2016, stating;

> The Court will further discuss the appropriate relief to be entered in a hearing set for **May 31, 2016 at 9:00 a.m.** in Courtroom 602, Sandra Day O'Connor U.S. Federal Courthouse, 401 W. Washington St., Phoenix, Arizona 85003-2151. It will shortly thereafter enter any applicable orders ***and determine if it will refer any matters for criminal contempt.***

*Id.* at 162 (emphasis added).

Since Sheriff Arpaio and Chief Deputy Sheridan ***already proffered in January 2015 to accept the very same civil contempt*** that Judge Snow found on May 13, 2016, *before* a year and a half of expenditure of judicial resources, and in light of Judge Snow's many comments, it is clear that the purpose of the May 31, 2016, hearing is criminal in nature.

Having already found Sheriff Arpaio and Chief Deputy Sheridan in civil contempt, the purpose of the May 31, 2016, hearing is to initiate criminal contempt proceedings or other criminal proceedings and to enter other findings against additional parties and non-parties.

However, under the peculiar circumstances of the accusation in this

case, **Judge Snow cannot get from here to there without destroying Dennis Montgomery along the way.**  The accusation depends upon twisting the Appellant's role as an innocent bystander into a key link concerning supposed foot-dragging in response to the 2013 permanent injunction.

The Appellant was engaged for several unrelated projects.  Yet the Appellant has been silenced from bringing accusations into the antiseptic of sunlight.   The Appellant Dennis Montgomery is being falsely portrayed as proof of the mindset of Sheriff Arpaio and others without explanation that his work was unrelated to anything in this case.

Of course, neither the Appellant nor his counsel is in any way responsible for defending any of the other Defendants below.  Yet the Appellant has a right not to become "road kill" as an innocent bystander in the rush to attack others.  The Appellant does not have to be an innocent victim in a brawl between giants without at least legal counsel guaranteed by the Sixth Amendment to the U.S. Constitution to defend him.

**3)  When and how counsel for the other parties were notified and whether they have been served with the motion.**

The Appellant notified all counsel by email mid-day on May 17, 2016, that the Appellant would file the renewed request for expedited treatment on an emergency basis.  Lead counsel for the Plaintiffs below (Appellees) Stanley Young responded that the Plaintiffs – Appellees oppose the Appellant's motion.

**4)** **Were all grounds advanced in this Court in support of Appellant's emergency motion submitted to the District Court.**

The circumstance triggering the need for emergency treatment of this appeal was created by the District Court on May 13, 2016.

Knowing that these matters are on appeal here in the Ninth Circuit, the trial judge nevertheless set a hearing for May 31, 2016, based upon false and groundless assertions presented in his May 13, 2016, Findings of Facts and Order Setting a Hearing for May 31, 2016 (hereinafter "Order"). Thus, the District Court is fully aware of the grounds advanced in this Court for Appellant's emergency motion. The Appellant previously moved for a stay and for expedited / emergency treatment and therefore all of the circumstances were previously presented, except for the District Court's own order on May 13, 2016, setting a May 31, 2016, hearing.

However, by denying the Appellant's *pro hac vice* of not one but two attorneys and denying Appellant's motion to intervene, the trial judge knowingly blocked the Appellant from pressing these concerns in the court below. All of these circumstances were submitted to the District Court below. But the trial judge refused to consider Appellant's pleadings.

Also, Circuit Rule 27-3 asks whether the issues here on appeal should be remanded. The gravamen of the Appellant's appeal, at least on two of the three issues, is that the Appellant was denied the opportunity to have his

attorney defend his legal rights in the trial court below.  Thus, in response to Circuit Rule 27-3, it is the Appellant's request that the appearance of his attorney *pro hac vice* be granted and his motion to intervene granted.

However, by this point, the proceedings have advanced to the point that "the toothpaste cannot be easily put back in the tube" as it is commonly said.  The Honorable G. Murray Snow ("Judge Snow") has already declared in his May 13, 2016, Order that the Appellant committed fraud.  In *absentia*, contradicted by all the evidence and in conflict with all the sworn testimony, based only on a tabloid newspaper *The Phoenix New Times*, Judge Snow has already found the Appellant guilty while simultaneously blocking his participation to defend himself.

Remanding without also vacating Judge Snow's orders, staying the proceedings, and recusing Judge Snow could not be an adequate remedy. The current posture is the "sentence first, evidence later" system of justice described in <u>Alice in Wonderland.</u>

Larry Klayman, Esq.
Freedom Watch, Inc.
D.C. Bar No. 334581
2020 Pennsylvania Avenue N.W., Suite 345
Washington, DC 20006
Telephone: (310) 595-0800
Email: leklayman@gmail.com

## I.    RENEWED REQUEST AND INTRODUCTION

The Appellant has a right to counsel under the Sixth Amendment to the U.S. Constitution.  Therefore, this honorable Court urgently needs to issue a ruling before May 31, 2016, so that Appellant's counsel Larry Klayman can defend his client in the scheduled hearing as legal counsel.  Appellant's counsel will appear on May 31, 2016, in the District Court in the underlying Case No. CV-07-2513.

Pursuant to Circuit Rule 27-12, Appellant - Putative Intervenor Dennis L. Montgomery renews his request for this honorable Court to expedite the briefing schedule for this appeal previously filed.  The Appellant previously filed in the U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit") an emergency motion to expedite briefing, argument, and decision and also an emergency motion to stay the proceedings in the District Court below.

This is a matter of extreme urgency.  These appeals were noted on July 15, 2015, and August 12, 2015, respectively.  The District Court judge below, the Honorable G. Murray Snow, has now transformed the case now into a criminal case, although the plans to allege criminal contempt are groundless and in conflict with the evidence in the record there.

Since the prior motions and since Appellees' answering brief and excerpt of the record were filed on January 21, 2016, no action has been taken by the Ninth Circuit.  This uncomplicated and straightforward appeal involving almost entirely

pure questions of law has languished.

Ironically, Judge Snow delayed issuing an order from November 20, 2015, until May 13, 2016, giving the Ninth Circuit plenty of time to act before the District Court ruled on matters that this appeal would impact. The District Court's evidentiary hearings, spread throughout 2015, concluded on November 20, 2015. Yet Judge Snow waited six months. The Ninth Circuit could have prevented the continuing depravation of the Appellant's rights, injury to his legal interests, damage to his property, and damage to his reputation as an innocent bystander.

For the Ninth Circuit not to have ruled by now, knowing that a decision might be imminent in the District Court, is careless and not in the interests of justice. This is especially compelling because all that the Appellant asked was to intervene, to have his counsel admitted *pro hac vice*, and for a ruling on the statutory disqualification. This should be easier than many typical cases.

The long delay creates an appearance that the Ninth Circuit wanted Judge Snow to rule precipitously. This Court has developed a reputation for being at times being political. This timing of events reinforces that reputation that this Court does not like conservatives like Sheriff Joe Arpaio and Dennis Montgomery, and counsel.

In a May 13, 2016, Order, as on other occasions, Judge Snow explicitly accused the Appellant, without foundation, of potentially criminal acts. This is a

ploy to use the Appellant as a pawn with which to attack Arizona Sheriff Joe

Arpaio ("Sheriff Arpaio") – while preventing the Appellant from intervening in the

case with the assistance of legal counsel.  Judge Snow is suppressing the evidence

that shows the criminal allegations as being false and baseless.  Judge Snow has

made it clear at every stage that he had already decided – back in January 2015 –

that he would initiate criminal proceedings against everyone possible – using the

Appellant as a bridge to concoct accusations of imaginary criminal acts.

Wherefore, Appellant Montgomery requests that this Court order the District

Court to enter the appearance of Appellant's counsel *pro hac vice,* accept

Appellant's intervention and enforce statutory and rule-based recusal.

Pursuant to 28 U.S.C. § 144, all of the orders entered by Judge Snow must

be vacated.  Judge Snow was obligated to suspend all activity in the case and allow

a different federal judge to examine and decide the question of the *prima facie* case

of a conflict of interest in violation of ethics rules.  In violation of 28 U.S.C. § 144,

Judge Snow continued to act and to enter orders in defiance of the statute and even

the prior orders of this Court.

## II.  STATEMENT OF THE CASE AND  PROCEDURAL BACKGROUND

This Court previously granted the Appellant's motion to consolidate two

appeals Case No. 15-16440 and Case No. 15-16626 from the same underlying

case.   Appellant filed his Notice of Appeal (Doc. # 1173) on July 15, 2015, in

Case No. 15-16440.  In Case No. 15-16626, Appellant filed his Notice of Appeal (Doc. # 1238) including from the denial of Larry Klayman's application for admission *pro hac vice* on August 12, 2015.  The appeals were docketed here on July 20, 2015, and August 17, 2015, respectively.  Appellant filed his opening briefs on October 23, 2015, and November 20, 2015, respectively.

The District Court denied not one, *but two*, attorneys applying to assist him *pro hac vice*.  Judge Snow was wrong to deny either of them.  But Judge Snow is clearly wrong to deny *both* of them.

This case was filed in 2007 and it concluded on October 2, 2013, by a final order labeled as "Supplemental Permanent Injunction / Judgment Order."  (Docs. No. 606, 670.)  Nothing in the case ever involved the Appellant in any way until years later.  None of the allegations involved the Appellant in any way.  No evidence or testimony or issues during the trial involved the Appellant.

But now the case is in post-judgment proceedings of contempt on topics also having nothing to do with Appellant Dennis Montgomery.  After MCSO's Deputy Ramon Armendariz killed himself on May 8, 2014, the Plaintiffs exploited the tragedy to claim that traffic stop videos found in his house showed that MCSO was slow to implement the injunction.[1]

Sheriff Arpaio and MCSO voluntarily admitted that their implementation of

---

[1]     See, Transcript, April 23, 2015, pages 646-660.

the 2013 injunction had been halting and too slow. The Defendants made a proffer in January 2015 [2] to accept a finding of civil contempt and dispense with the hearings, but Judge Snow insisted upon spending nearly all of 2015 on hearings that could have been avoided by accepting the Defendants' proffer. Judge Snow has spent a year and a half _not_ to establish what Sheriff Arpaio already volunteered but to bring _criminal_ contempt proceedings.

On April 15, 2015, this Ninth Circuit chastised Judge Snow, and vacated his use of monitors for matters that have --

> no bearing on the constitutional rights at stake here. We therefore vacate these particular provisions and order the district court to tailor them so as to address only the constitutional violations at issue. _See Milliken_, 433 U.S. at 282.

_Melendres v. Arpaio_, Record No. 13-16285, U.S. Court of Appeals for the Ninth Circuit, Opinion, April 15, 2015, page 23.

That is, this Court admonished Judge Snow that the quality or effectiveness of Sheriff Arpaio's leadership of MCSO was not a proper topic and outside the jurisdiction of the District Court limited to implementing the 2013 injunction.

Yet then on April 30, 2015, the Appellant was shocked to learn that he had been attacked in questioning led by Judge Snow in an evidentiary hearing back on

---

[2]     Memorandum in Support of Sheriff Arpaio's Declaration of Compliance with Court Orders and Opposing the Imposition of a Criminal Contempt Referral, dated January 8, 2015. (Docket #841).

April 23, 2015.[3]  Judge Snow introduced, *sua sponte*, a bizarre conspiracy theory from a counter-culture music and lifestyle tabloid newspaper *The Phoenix New Times*.  *Id.* The tabloid claimed that Dennis Montgomery's work on several projects for Sheriff Arpaio's "Cold Case Posse" was all about Judge Snow.

Judge Snow built an entire case against the Appellant, in his absence, around the proposition that testimony by Sheriff Arpaio and MCSO officials didn't match *The Phoenix News Story* conspiracy theory and Judge Snow's assumptions that everything that happened was about Judge Snow.

Judge Snow also insists that Dennis Montgomery is relevant (in *absentia*) to the underlying case because (1) Judge Snow believes Sheriff Arpaio spent MCSO funds poorly by paying Montgomery, (2) Judge Snow assumes that MCSO can only do one thing at a time, such that MCSO working with Montgomery on unrelated topics means that MCSO could not also be working on implementing the 2013 injunction, and (3) Judge Snow's assumption that Montgomery's work for the MCSO Cold Case Posse was about attorney work-product investigating whether Judge Snow might be biased against the Defendants below.

The quality of Sheriff Arpaio's management or leadership of MCSO is not a proper topic in enforcing the 2013 injunction.  Whether MCSO spent its money poorly or well by engaging the Appellant as a confidential informant is not before

---

[3]  See, Transcript, April 23, 2015, pages 646-660.

the District Court, as this Court ordered.  Whether working with Montgomery as a confidential informant would limit MCSO's ability to also implement the 2013 injunction at the same time is a question of management.

The refusal to recognize that not everything Dennis Montgomery was working on was about Judge Snow has now led – as Appellant warned – to ever-more serious and increasingly unhinged accusations.  Although some people inside MCSO didn't feel the results (on which projects?) met their needs, Judge Snow has leaped to the idea that Dennis Montgomery committed fraud against MCSO.  Yet neither Judge Snow nor any of the parties' counsel ever pinned down *which* of many different projects Montgomery worked on vague expressions of dissatisfaction were referring to, *what* the dissatisfaction was, and whether (as obvious from the documents) there were merely *differences of opinion* within a large bureaucracy.  Judge Snow transformed routine debate typical of any bureaucracy about whether (essentially) a vendor's output was what they were looking for or not into outrageously false and unsubstantiated charges of fraud.

In Appeal No. 15-16440, Appellant Montgomery sought to have his attorney Jonathon Moseley admitted *pro hac vice* to represent him in the trial court below. On May 14, 2015, the District Court denied the application for admission of Moseley *pro hac vice,* without prejudice to reapply.  (Docket # 1093.)  The Appellant and Moseley reapplied by their motion for reconsideration.  The Court

denied the motion for reconsideration on July 10, 2015, with finality. (Docket # 1167.) The Appellant timely appealed from that final order on July 15, 2015. (Docket # 1173.)

Then, simultaneous with appealing the denial of his attorney Moseley's pro hac vice motion and concomitant motions to intervene and for recusal or disqualification of the lower court judge, the Honorable G. Murray Snow, Appellant-Putative- Intervenor seeking to mitigate the harm as well as to provide opportunity for the District Court to correct the error, the Appellant – Putative Intervenor Montgomery then pursued admission of alternate counsel, Larry Klayman, by application for admission *pro hac vice*.

Confirming the error of the District Court in denying not one, but two, attorneys seeking admission *pro hac vice* for the Appellant Montgomery, the District Court also denied the application for admission *pro hac vice* of Appellant's attorney Klayman by order delivered from the bench verbally on August 11, 2015. (Docket # 1237.) The Appellant timely appealed from that final order on August 12, 2015. (Docket # 1238.)

## III.  **ARGUMENT**

The Appellant Dennis Montgomery has a right to counsel under the Sixth Amendment, including in the now-scheduled May 31, 2016 hearing, at which severe legal harm to the Appellant's legal rights – those complained of here in this

appeal – will continue to be repeated, magnified, and continued.  Every day that this out of control situation continues our client continues to be harmed.

An order is needed by this Ninth Circuit, promptly, to correct the abuse by the District Court of Appellant's legal rights in denying him the representation of legal counsel appearing *pro hac vice*.  The judge has issued an opinion on May 13, 2016, which destroys our client's reputation and harms his legal and other rights. All of Judge Snow's orders must be vacated as a result of his defiance of the requirements of 28 U.S.C. § 144.

The Appellant asked to intervene to protect his legal interests and protect his property and intellectual property.  Judge Snow clearly intended these proceedings to end in a criminal referral and/or criminal contempt proceedings.

Ignoring a proffer of civil contempt, Judge Snow has waived aside anything but his pre-determined, judgment in advance that there should be a criminal charges.

For example, on page 62 of the Order, Judge Snow enters a finding of fact:

> 351. On April 23, 2015, Sheriff Arpaio testified that the MCSO and Mr. Montgomery exchanged communications and materials…."

while making no attempt to link those communications to the case at bar, as opposed to examining Barack Obama's birth certificate or other projects.

Judge Snow clearly signaled that he has placed the Appellant in legal

jeopardy of criminal proceedings in his finding of fact:

> 360. First, ***Mr. Montgomery committed a fraud on the
> MCSO.*** (Doc. 1417 at Tr. 1562-64; Doc. 1457 at Tr.
> 2455.) Having paid large sums of money to Montgomery
> for his investigations, ***the MCSO was a victim of that
> fraud.*** Disclosure could therefore bring embarrassment to
> Sheriff Arpaio and the MCSO.

*Id.* at 64 (emphases added).

Of course, nothing in the cited hearing transcript passages cited actually
supports the wild statements by Judge Snow. Some MCSO personnel doubted that
the Appellant's work out met their needs. But finding information not to be useful
is a thousand miles from fraud. Moreover, Judge Snow never on any topic at any
time pinned down *which* of several different projects Montgomery worked on the
emails or testimony were referring to. Judge Snow knowingly confused discussion
of many, totally-unrelated projects.

Next, Judge Snow entered a finding of fact: "361. Second, Sheriff Arpaio
and Mr. Montgomery shared the same attorney and had shared this attorney since
at least November 2014." This should hardly need comment. The record shows
the Appellant's attorney and Sheriff Arpaio explicitly confirming that Appellant's
attorney played and plays absolutely no role in this case at bar for Arpaio.

Judge Snow further entered a finding of fact on page 64 of the Order:

> 362. Third, Sheriff Arpaio testified that the MCSO
> continued to engage Mr. Montgomery as a confidential
> source up through and including the time of the hearing,

despite Arpaio's repudiation of the substance of
Montgomery's reports, and ***despite the overwhelming
evidence of Montgomery's fraud.***

Id. 64-65 (emphasis added).

Again, a feeling that one's analytical results are not useful does not add up to

"fraud." Yet, Judge Snow confused the Appellant's work on unrelated projects.

There is no evidence at all, much less overwhelming, of any fraud.

Judge Snow also entered a finding of fact:

> 373. The conspiracy was largely concocted by Mr.
> Montgomery, but Sheriff Arpaio played a role in creating
> it. For example, Arpaio maintained a page of notes with
> three typewritten entries, which he acknowledges he may
> have typed in November 2013, and additional notes in his
> handwriting. (Doc. 1457 at Tr. 2303–04.) The third entry
> refers to an article in *The Arizona Republic* that indicated
> that now retired Senator Kyl had begun working for the
> Covington & Burling law firm. The note then asserts
> (incorrectly) in Arpaio's handwriting that "Snow's wife
> works there." (Ex. 2074B.) Arpaio further goes on to
> note that Kyl nominated the undersigned for a federal
> judgeship, and that the undersigned was confirmed by the
> U.S. Senate with Kyl on the judiciary committee in June
> 2008. Arpaio wrote at the top of the page the incorrect
> statement that this Court's sister-in-law works for
> Covington & Burling. ***Montgomery began to find
> purported evidence of Kyl's involvement in the
> conspiracy only after Arpaio made these connections in
> the notes he drafted.***

*Id.* at 67 (emphasis added).

Once again, without making any attempt to identify *which* of many projects

the Appellant worked on were being referred to, such as forensic analysis of

Barack Obama's birth certificate, Judge Snow entered a finding of fact on page 68

of his Order (emphasis added):

> 377. In early January 2015, the MCSO was representing
> to third parties that "[Dennis Montgomery] *is continuing
> to work with the Sheriff's office at this time."* (*See* Doc.
> 1558 at Tr. 4362.) Further, despite the analysis revealing
> that the hard drive data was invalid, Posseman Zullo
> stated that the MCSO was "unable to determine whether
> any evidence has been in fact manipulated by
> [M]ontgomery." (Ex. 2969A.) *Sheriff Arpaio
> acknowledged that his people were still working with
> Mr. Montgomery in January 2015.* (Doc. 1457 at 2387.)
> In fact, the MCSO kept the Montgomery investigation
> open throughout the hearing. (Doc. 1465 at Tr. 1307–09,
> 1335; *see also* Doc. 1457 at Tr. 2407, 2421–22; *see* Ex.
> 2858.)

Reacting out of a thin skin, Judge Snow merely assumed that Montgomery's

work had to be all about Judge Snow.

Therefore, the Appellant is clearly at legal risk of becoming a speed bump in

Judge Snow's rush to attack Sheriff Arpaio only months before the election. The

Appellant as an innocent bystander needs to have legal counsel immediately.

A non-indigent criminal defendant's Sixth Amendment rights encompass the

right to be represented by the attorney selected by the defendant. *Wheat v. United

States*, 486 U.S. 153, 159, 100 L. Ed. 2d 140, 108 S. Ct. 1692 (1988); *Powell v.

Alabama*, 287 U.S. 45, 53, 77 L. Ed. 158, 53 S. Ct. 55 (1932)

"It is hardly necessary to say that, the right to counsel being conceded, a

defendant should be afforded a fair opportunity to secure counsel of his own

choice." *Powell v. Alabama,* 287 U.S. at 53.

"A defendant's right to the counsel of his choice includes the right to have an out-of-state lawyer admitted pro hac vice."  *United States v. Lillie*, 989 F.2d 1054, 1056 (9th Cir.1993) (citation omitted), overruled on other grounds by *United States v. Garrett*, 179 F.3d 1143 (9th Cir.1999).

"[A] decision denying a pro hac vice admission necessarily implicates constitutional concerns." *Panzardi-Alvarez v. United States*, 879 F.2d 975, 980 (1st Cir.1989).

In *United States v. Walters,* 309 F.3d 589, 592 (9th Cir. Cal. 2002), even though a *pro hac vice* attorney there may have properly been denied due to the fact that he resided and had an office in California, yet in a criminal context, the denial was improper because "the district court applied the local rule mechanistically, without discussion of whether the interest of the fair, efficient, and orderly administration of justice required denial of the application." *Id.*

In *United States v. Gonzalez-Lopez*, 399 F.3d 924, 932 (8th Cir. Mo. 2005), the Court vacated the conviction against the defendant because the trial court had improperly denied the *pro hac vice* application of defendants' counsel of choice by relying on improper evidence.

Thus, the District Court may already have forfeited any opportunity to embroil this Appellant in criminal proceedings in its schemes to attack Sheriff

Arpaio mere months before an election through collateral attacks on innocent bystanders. However, the Appellant is clearly entitled to the protection of legal counsel including his chosen attorneys admitted *pro hac vice.*

Here, Judge Snow did far worse than in *United States v. Walters*, by "mechanistically" reciting the false and erroneous standard – an error of law (not of fact) – that merely because an attorney represents a party in another, unrelated context, there is a conflict of interest. That is clearly false and erroneous as a matter of law.

Judge Snow made no attempt to identify any actual conflict of interest. Judge Snow certainly did not engage in the required "discussion of whether the interest of the fair, efficient, and orderly administration of justice required denial of the application." *Id.*

Here, Judge Snow's only attempt to concoct a conflict of interest is that the witnesses testify under oath that Judge Snow's belief in *The Phoenix New Times* is misguided and misplaced. Judge Snow refuses to let go of the reporting of that tabloid, and assumes that the sworn witnesses in his court must be committing perjury when describing how the tabloid reporting is inaccurate. From this, Judge Snow finds a conflict of interest in that nobody testifying in court agrees with *The Phoenix New Times,* so the witnesses must be lying. [4]

---

[4]     See, Transcript, April 23, 2015, pages 646-660.

As a result, the Appellant is now at risk criminally. The standards for having his legal counsel for criminal defense appear *pro hac vice* are different standard for a criminal matter. This Court should order that the Appellant's chosen attorney Larry Klayman be admitted *pro hac vice*.

This Court should also vacate the May 13, 2016, Order because Judge Snow was required to recuse himself. Judge Snow should not have issued any kind of opinion or taken any action. He was required to recuse himself and allow another federal judge to rule on the disqualification, on the pro hac vice, and intervention.

In the District Court below, this is a judge who has violated the canons of ethics and is subject to serious conflicts of interest. As set forth in the attached affidavit of Professor Ronald Rotunda, a renowned expert on Professional Responsibility and Constitutional Law, attached as Exhibit 2; ER578, there is no question that Judge Snow's continued role in the case is unacceptable.

Pursuant to 28 U.S.C. § 144, Judge Snow was obligated to suspend all activity in the case and allow a different federal judge to examine and decide the question of the *prima facie* case of a conflict of interest in violation of ethics rules.

The Appellant's affidavit compelled Judge Snow to "proceed no further" in the case" and requires "another judge shall be assigned to hear such proceeding," without subjective analysis or discretion under 28 U.S.C. § 144:

> "Whenever a party to any proceeding in a district court
> makes and files a timely and sufficient affidavit that the

> judge before whom the matter is pending has a personal
> bias or prejudice either against him or in favor of any
> adverse party, such judge shall proceed no further
> therein, but another judge shall be assigned to hear such
> proceeding. The affidavit shall state the facts and the
> reasons for the belief that bias or prejudice exists…."

A judge's impartiality "might reasonably be questioned" by the public where the judge's wife volunteers that the judge hates the defendant and will do anything to remove him from office [5] – and neither the judge nor his wife have denied it, sought to explain the admission, nor apologized.

Moreover, Judge Snow has "personal knowledge of disputed evidentiary facts concerning the proceeding." Judge Snow will have or already does have a private explanation from his own wife of these disputed facts and events.

Any competent and uncompromised defense attorney must call Judge Snow and his wife as witnesses in order to present a thorough defense to whatever charges Judge Snow plans to bring. Judge Snow is likely to preside over testimony and cross-examination of his own wife,[6] who will be testifying about him.

And Judge Snow ordered $4 million of taxpayer funds paid to Covington & Burling where his brother-in-law is a partner.[7] The public would reasonably question a judge's impartiality after ordering $4 million paid to the law firm.

---

[5] Intervenor Dennis L. Montgomery's Motion to Disqualify Judge G. Murray Snow Under 28 U.S.C. § 144 Motion for Recusal, May 7, 2015 (Docs. # 1067, 1058); ER552,541.

[6] *Id. at 9.*

[7] *Id.*

The demands for recusal were timely. Most of the circumstances requiring recusal were created by Judge Snow himself starting only on April 23, 2015.

Furthermore, the District Court cannot hold jurisdiction of this case while several appeals are pending here in the Ninth Circuit. A stay of the proceedings below was explicitly requested, and should be ordered. The District Court should not be taking any action while the case is here in this Ninth Circuit.

Events in the District Court created the need for and circumstances of Appellant's intervention efforts. This is not a case where a person believes he might have a reason to participate. As set forth in the record, this is a case in which Judge Snow and the Appellees attacked the Appellant on their own initiative, and went very far out of their way to attack him, straying an extraordinary distance from any relevant issue in the case below to wrongfully drag Appellant Montgomery into the case, but deny him a voice and the right to defend himself pursuant to due process of law.

The Appellant Montgomery is not a party to the case, but was nevertheless, as the record reflects, threatened with criminal prosecution and his legal rights and privileges have been harmed.

Therefore, Appellant-Putative Intervenor Dennis Montgomery respectfully requests that his *pro hac vice* motion and concomitant motions to intervene and for recusal and disqualification be granted and that Judge Snow's rulings since July

2015 be vacated.

## IV.    <u>CONCLUSION</u>

The Ninth Circuit needs to immediately set oral argument on an expedited

basis, rule immediately on the Appellant's uncomplicated appeal, vacate the May

13, 2016, order as being in violation of 28 U.S.C. § 144, order the Appellant's

chosen counsel admitted *pro hac vice*, order the Appellant's motion for

intervention granted, and order Judge Snow disqualified pursuant to 28 U.S.C. §

144 or at the least that the requirement of 28 U.S.C. § 144 for another judge to

review and rule on the question be enforced, as well as to vacate all of Judge

Snow's prior orders.

The Appellant requested of all parties on May 17, 2016, their position on

consenting or opposing the Appellents' request for  expedited treatment of this

appeal. Stanley Young as lead counsel for the Plaintiffs' responded that the

Plaintiff-Appellees opposed this request.  Other counsel did not respond.

Dated:  May 18, 2016                 Respectfully submitted,

                                                  /s/ *Larry Klayman*
                                                  Larry Klayman, Esq.
                                                  Freedom Watch, Inc.
                                                  D.C. Bar No. 334581
                                                  2020 Pennsylvania Avenue N.W., Suite 345
                                                  Washington, DC 20006
                                                  Telephone: (310) 595-0800
                                                  Email: leklayman@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 18, 2016, I electronically filed the foregoing motion with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the Ninth Circuit's CM/ECF system, causing it to be served upon the following counsel of record in the case through CM/ECF:

> Stanley Young, Esq.
> Andrew Carl Byrnes, Esq.
> 333 Twin Dolphin Road
> Redwood Shores, CA 94065
> syoung@cov.com
> 650-632-4700
> Attorneys for Plaintiffs
> (Service via Email)

> Daniel Pochoda, Esq.
> ACLU FOUNDATION OF ARIZONA
> 3707 N. 7th Street, Suite 235
> Phoenix, AZ 85014
> dpochoda@acluaz.org
> 602-650-1854
> Attorney for Plaintiffs
> (Service via Email)

> Cecilia D. Wang
> ACLU FOUNDATION
> IMMIGRANTS' RIGHTS PROJECT
> 39 Drumm Street
> San Francisco, CA 94111
> cwang@aclu.org
> 415-343-0775
> Attorney for Plaintiff Melendres
> (Service via Email)

> Thomas P. Liddy, Esq.
> CIVIL SERVICES DIVISION
> MARICOPA COUNTY ATTORNEY'S OFFICE
> 222 North Central Avenue, Suite 1100

Phoenix, AZ 85005
liddyt@mcao.maricopa.gov
602-506-8541
Attorney for Defendant Joseph Arpaio and Maricopa County
Sheriff's Office
(Service via Email)

Michele M.  Iafrate, Esq.
IAFRATE & ASSOCIATES
649 North Second Avenue
Phoenix, AZ 85003
miafrate@iafratelaw.com
602-234-9775
Attorney for Defendant Joseph Arpaio and Maricopa County
Sheriff's Office
(Service via Email)

Deborah L.  Garner, Esq.
IAFRATE & ASSOCIATES
649 North Second Avenue
Phoenix, AZ 85003
dgarner@iafratelaw.com
602-234-9775
Attorney for Defendant Joseph Arpaio and Maricopa County
Sheriff's Office
(Service via Email)

Mr. John Masterson
Mr. Justin M. Ackerman
Mr. Joseph J. Popolizio
JONES SKELTON & HOCHULI, PLC
2901 N.  Central Avenue, Suite 800
Phoenix, Arizona 85012-2728
Telephone:  602-263-1700
jmasterson@jshfirm.com
jpopolizio@jshfirm.com
jackerman@jshfirm.com
Attorney for Defendant Sheriff Joseph Arpaio
(Service via Email)

Andre Segura, Esq.
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Fl.
New York, NY 10004
asegura@aclu.org
212-549-2676
Attorney for Plaintiffs
(Service via Email)

Anne Lai
UCI School of Law
401 E. Peltason Drive. Suite 3500
Irvine, CA 92616
alai@law.uci.edu
949-824-9894
(Service via Email)

Jorge M. Castillo
MALDEF
634 S. Spring Street, 11th Fl.
Los Angeles, CA 90014
jcastillo@maldef.org
213-629-2512
Attorney for Plaintiffs
(Service via Email)

Richard K. Walker
WALKER & PESKIND, PLLC
16100 N. 71st Street, Suite 140
Scottsdale, AZ 85254-2236
rkw@azlawpartner.com
480-483-6336
Attorney for Defendant Maricopa County
(Service via Email)

/s/ *Larry Klayman*
Larry Klayman, Esq.
Freedom Watch, Inc.
D.C. Bar No. 334581

21

2020 Pennsylvania Avenue N.W., Suite 345
Washington, DC 20006
Telephone: (310) 595-0800
Email: leklayman@gmail.com